## A00A1009. ROMAN v. THE STATE.
(537 SE2d 684)

BLACKBURN, Presiding Judge.

Timothy Bernard Roman appeals his conviction for four counts of armed robbery, contending that the trial court erred by: (1) denying his motion to sever trial; (2) admitting certain evidence regarding his identification by robbery victims during a pretrial lineup; and (3) allowing the State to introduce evidence of his character in violation of OCGA § 24-9-20 (b). For the reasons set forth below, we affirm.

Viewing the evidence in the light most favorable to the verdict, the record shows that Roman was indicted for six armed robberies occurring in Troup County within a one-month period. On May 4,

1994, Carrie Scott, an employee of Holmes Pharmacy, was robbed at gunpoint by a man wearing a hat and sunglasses. Prior to trial, Scott identified Roman from a photo array as the person who looked most like the robber, and she later definitively identified Roman as the perpetrator in a physical lineup. On May 9, 1994, Shelby Hanson, an employee of Corley Drugs was robbed at gunpoint by a man wearing a baseball cap and sunglasses. Prior to trial, Hanson identified Roman as the perpetrator in a lineup. On May 16, 1994, Teresa Hendricks and Gloria East, employees of SOS Cleaners, were robbed at gunpoint by a man wearing a baseball cap, a bandanna, and sunglasses. Prior to trial, both Hendricks and East identified Roman from a photo array as the person who looked most like the robber, and they later definitively identified Roman as the perpetrator in a physical lineup.

On May 18, 1994, Kathy Jones and Holley Hartley, employees of Shoe World, were robbed at gunpoint by a man wearing a baseball cap, a hood, a bandanna, and sunglasses. Prior to trial, both Jones and Hartley identified Roman as the perpetrator in a lineup. On June 2, 1994, Terri Johnston, an employee of The Gallery, was robbed at gunpoint by a man wearing a baseball cap, a bandanna, and sunglasses. Prior to trial, Johnston identified Roman as the perpetrator in a lineup. Finally, on June 4, 1994, Sheila Rogers, an employee of Stephen's Grocery, was robbed at gunpoint by a man wearing a baseball cap, a scarf, and sunglasses. In addition, Rogers provided the police with the tag number of the car driven by the robber, and it was determined that this vehicle was registered to Roman's girlfriend. Prior to trial, Rogers identified Roman as the perpetrator in a lineup. In addition, all of the witnesses positively identified Roman as the perpetrator during trial, and they indicated that this in-court identification was independent of any pretrial identifications including photo arrays and lineups.

After a jury trial, Roman was convicted for the robberies of SOS Cleaners, Shoe World, The Gallery, and Stephen's Grocery. He was acquitted of the robberies of Holmes Pharmacy and Corley Drugs.

1. The evidence of record, as discussed above, was sufficient to support Roman's convictions. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Roman contends that the trial court erred by denying his motion to sever the trial, arguing that he was unfairly prejudiced because he had to defend against six counts of armed robbery at one time. We disagree.

The determination whether to grant or deny a motion to sever the trial of separate criminal offenses is within the discretion of the trial court. *Williams v. State*, 178 Ga. App. 581, 584 (1) (344 SE2d 247) (1986). After reviewing the interests of the State and the

accused, a trial court may properly deny a motion to sever when

> the crimes alleged were part of a continuous transaction or series of similar transactions conducted over a relatively short time, and from the nature of the entire transaction, it would be difficult to present to a jury evidence of one of the crimes without also referring to or permitting evidence of the others.

(Punctuation omitted.) *Rocha v. State*, 234 Ga. App. 48, 53 (5) (506 SE2d 192) (1998).

In this case, the separate acts of armed robbery are strikingly similar. As the trial court found, the separate acts of robbery appear to be a spree of criminal activity involving a common modus operandi. In each robbery, the perpetrator, as described by the victims, had similar physical characteristics, wore the same type of clothing, and used the same means of pretending to make a purchase to get the victim to open the cash register. Furthermore, due to the similarity of the robberies, even if they were tried separately, each act would have been admissible in the trial of each other act as evidence of a similar transaction. *Weaver v. State*, 206 Ga. App. 560, 561 (1) (426 SE2d 41) (1992). Accordingly, the trial court did not abuse its discretion in denying Roman's motion to sever. *Redding v. State*, 219 Ga. App. 182, 184 (3) (464 SE2d 824) (1995); see *Cooper v. State*, 253 Ga. 736, 737-738 (3) (325 SE2d 137) (1985); *Anderson v. State*, 238 Ga. App. 866 (519 SE2d 463) (1999).

3. Roman contends that the trial court erred by failing to suppress evidence of his identification during a pretrial lineup and during his trial. Specifically, Roman argues that his identification during the lineup and at trial by Scott, Hendricks, East, and Jones was tainted by the prior photo array shown to these witnesses. Roman theorizes that these witnesses definitively identified him in the lineup only because they had previously identified his picture as "the one most like the robber."

> In determining whether a due process violation occurred in the conduct of the pretrial confrontation between the eyewitness and the appellant, the test is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. In this determination, the following factors will be considered: (a) opportunity to view the defendant at the time of the offense . . . ; (b) the witness' degree of attention . . . ; (c) the accuracy of the witness' prior description . . . ; (d) the level of certainty demon-

strated . . . ; and, (e) the length of time between the crime and the identification.

(Citations omitted.) *McCoy v. State*, 190 Ga. App. 258, 260-261 (3) (378 SE2d 888) (1989).

Roman's arguments are belied by the record in this case. Scott, Hendricks, East, and Jones all testified that they got a good look at Roman while the robberies were being committed and that their identification of him was based on the robbery itself. These witnesses further testified that their ultimate identification of Roman at trial was completely independent of any pretrial identification process. Accordingly, we find that Roman's pretrial lineup was not impermissibly suggestive. Moreover, it did not affect the witnesses' identification of Roman during trial.

Roman further argues, however, that he was deprived of his due process rights because his attorney was not present during the lineup. Here, Roman's lineup occurred prior to his indictment, and

> [t]he right to counsel attaches only to corporeal identifications taking place at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois*, 406 U. S. 682, 689 (92 SC 1877, 32 LE2d 411) (1972).

(Punctuation omitted.) *Brown v. State*, 243 Ga. App. 430 (533 SE2d 453) (2000). As such, Roman's argument is misplaced.

4. Finally, Roman contends that the trial court improperly allowed the State to cross-examine him regarding his prior criminal record, thereby putting his character in issue in violation of OCGA § 24-9-20 (b).

At the end of his direct examination, Roman's counsel asked Roman if there was anything he would like to convey to the jury about his case. With regard to his identification by the victims, Roman responded, "I don't know why they picked me because, I guess because I been in trouble before; and which I have. I don't deny that. But I'm not the person." Then, on cross-examination, the State asked Roman to explain this statement and asked him about his past criminal record.

> There are numerous instances where the state may properly offer evidence that the defendant has committed prior crimes for a purpose other than to show the defendant is a person of bad character. The fact that such evidence may reflect adversely on the defendant does not place his character "in issue" within the meaning of OCGA § 24-9-20 (b).

(Citations omitted.) *Jones v. State*, 257 Ga. 753, 759 (1) (c) (363 SE2d 529) (1988).

> Assuming [Roman] did not, merely by volunteering that he had been [in trouble before], put his character "in issue" within the meaning of OCGA § 24-9-20 (b) so as to permit rebuttal by the State, he nevertheless raised an issue which may be fully explored by the State on cross-examination. . . . The State, like any other party, has the right to conduct a thorough and sifting cross-examination of a witness as to any material issue. The State had the right to pursue the specifics of [the] topic [of Roman's past trouble which Roman] had introduced. . . . [Roman] introduced this material issue and the State was entitled to explore it on cross-examination.

*Wilkey v. State*, 215 Ga. App. 354, 355 (450 SE2d 846) (1994).
*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JULY 18, 2000.

*Duncan, Thomasson, Leonard & Shattuck, Wesley T. Leonard*, for appellant.
*Peter J. Skandalakis, District Attorney, Julianne W. Holliday, Assistant District Attorney*, for appellee.