Mark BOBB, Appellant,

v.

UNITED STATES, Appellee.

No. 95–CF–1822.

District of Columbia Court of Appeals.

Argued Oct. 21, 1999.

Decided Sept. 7, 2000.

Joseph R. Conte, Washington, DC, appointed by the court, for appellant.

Rachel Adelman Pierson, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., Chrisellen R. Kolb, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, FARRELL, and REID, Associate Judges.

REID, Associate Judge:

In this case concerning a challenge to a rape conviction under former D.C.Code § 22–2801 (repealed in 1995), appellant Mark Bobb contends that the trial court erred by: (1) requiring him to testify at a preliminary hearing held pursuant to D.C.Code § 22–4122 (1996) because of his consensual sex defense theory; (2) allowing the government to cross-examine him, at the pre-trial hearing, on matters beyond the scope of his direct testimony; and (3)

violating, at trial, his Fifth Amendment constitutional privilege against self-incrimination by permitting "in depth cross examination" of him by the government at trial, based on his testimony at the § 22–4122 hearing. We affirm the judgment of the trial court and conclude that the court did not: (1) compel Bobb to testify at the § 22–4122 hearing; or (2) abuse its discretion at the pre-trial hearing by allowing the government to cross-examine Bobb regarding the details of his assertions of consensual sex with the complainant. Furthermore, Bobb has not shown plain error in the government's use, at trial, of his pre-trial hearing testimony to impeach his credibility.

## BACKGROUND AND FACTUAL SUMMARY

On June 7, 1994, a woman accused Bobb of rape. Bobb maintained that he and the woman had consensual sex. Bobb was arrested and tried for the offense of rape. Prior to trial, Bobb filed a motion, pursuant to § 22–4122, informing the court that: "At the trial in this matter the defense intends to put on evidence, through cross and direct examination, of the complainant's past sexual behavior with the accused for the purpose of establishing consent." [1]

---

1. D.C.Code § 22–4122(b)(1), (2) and (3) provides:

(b)(1) If the person accused of committing an offense under subchapter II of this chapter intends to offer under subsection (a) of this section, evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence not later than 15 days before the date on which the trial in which such evidence is to be offered is scheduled to begin, except that the court may allow the motion to be made at a later date, including during trial, if the court determines either that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence or that the issue to which such evidence relates has newly arisen in the case. Any motion made under this paragraph, and the accompanying offer of proof, shall be filed under seal and served on all other parties and on the alleged victim.

(2) The motion described in paragraph (1) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (a) of this section, the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing, the parties may call witnesses, including the alleged victim, and offer relevant evidence. If the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers, or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue.

D.C.Code § 22–4122 is part of the District's Anti–Sexual Abuse Act which, among other things, was enacted to "make changes to certain evidentiary and procedural aspects of sexual abuse cases." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 10–87, "ANTI-SEXUAL ABUSE ACT OF 1994," at 1 (September 28, 1994). Section 22–4122 "codi[fies] [a] ... federal rule of evidence[2] which prevents the unnecessary introduction, at trial, of evidence of a sexual abuse victim's prior sexual conduct. This provision is commonly referred to as the 'rape shield law.'" *Id.* at 15. Under § 22–4122, "[i]f the ... accused ... intends to offer ... evidence of specific instances of an alleged victim's past sexual behavior," the defendant must make a motion to this effect. § 22–4122(b)(1). A "written offer of proof" must be filed with the motion. § 22–4122(b)(2). Upon consideration of the motion, the trial court is required to schedule a hearing if, among other factors, the evidence "is constitutionally required to be admitted"; or shows "past sexual behavior" under circumstances where consent is an issue in the case before the court. § 22–4122(a)[3], (b)(2).

In filing the § 22–4122 motion, counsel for Bobb attached a short written offer of proof, stating in full:

> (3) If the court determines on the basis of the hearing described in paragraph (2) of this subsection that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the court specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined. (D.C. Law 10–257, § 302, 42 D.C.Reg. 53, 59–60, (May 23, 1995)).

**2.** Although the Council committee report does not identify the specific federal rule which was codified, presumably it was a version of Fed.R.Evid. 412.

**3.** Section 22–4122(a) provides:

> (a) Notwithstanding any other provision of law, in a criminal case in which a person

1. The defendant is charged with the forcible rape of [the complainant] on or about June 7, 1994.

2. The defendant and the complainant are known to each other.

3. Based upon information and belief counsel would state that beginning approximately February, 1994, the defendant and the complainant engaged in consensual vaginal and oral intercourse and that the complainant received some compensation in return.

At the § 22–4122 pre-trial hearing, which was closed to the public, *see* § 22–4122(b)(2) ("a hearing in chambers"), counsel for the defense called the complainant as the first witness. She denied having consensual sex with Bobb on June 7, 1994, or any other occasion. After her testimony, the trial court asked counsel for Bobb whether he had any other witnesses. He replied: "We call the defendant. I note my objection though. Okay. I don't think we need to have the interpreter present." Bobb asserted that he had had consensual sex with the complainant approximately four or five times between October 1993 and June 1994. The government conducted fairly extensive cross-examination of Bobb. Defense counsel objected, variously,

is accused of an offense under subchapter II [sex offenses] of this chapter, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is:

(1) Admitted in accordance with subsection (b) of this section and is constitutionally required to be admitted; or

(2) Admitted in accordance with subsection (b) of this section and is evidence of:

(A) Past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or bodily injury; or

(B) Past sexual behavior with the accused where consent of the alleged victim is at issue and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which such offense is alleged.

on the grounds that: the cross-examination was beyond the scope of the direct; there was no need for further cross-examination; and certain questions were irrelevant.

At the end of the § 22–4122 hearing, counsel for Bobb moved to seal the entire proceeding. The trial court agreed to seal the proceeding but stated that it could "be unsealed for the purpose of the parties getting a transcript so they can have it available to test the defendant's testimonial credibility if he chooses to testify." Just before trial commenced, defense counsel stated an objection to the unsealing of the hearing transcript, based on the statutory language in § 22–4122(b)(2) requiring the hearing to be held "in chambers." The trial court noted that the judge who presided over the hearing had already denied defense counsel's request.

At trial, the government's evidence revealed that on June 7, 1994, Bobb went to the rooming house on Fuller Street, N.W., in the District of Columbia, where he previously lived, to retrieve a blender. The complainant shared a room with her boyfriend in the same rooming house. Her boyfriend collected rent at the rooming house, and Bobb had alerted the complainant's boyfriend on the morning of June 7, 1994, that he needed to get his blender. Later that day, according to the testimony of the complainant, Bobb knocked on the door to the complainant's room and asked for the blender. After the complainant gave him the blender, she closed the door. Bobb knocked on her door again to turn in his keys to the rooming house. When the complainant opened the door and extended her arm to take the keys, Bobb grabbed her wrist and forced her into a bathroom. He choked the complainant and threatened to kill her if she shouted. Eventually he raped her. After the rape, the complainant immediately called her boyfriend who was at work. He went at once to the Fuller Street rooming house and found the complainant screaming and crying. He summoned a uniformed Secret Service agent who was nearby. The agent accompanied the boyfriend to his room at the Fuller Street address. There, the agent observed the complainant screaming and crying. She was crouched in a fetal position. The agent heard the complainant say: "He raped me."

Dr. Lynde Knowles–Jonas, a specialist in obstetrics and gynecology and at that time a senior resident at Georgetown University, testified at trial as an expert for the government. Dr. Knowles–Jonas performed a pelvic examination of the complainant after the rape. She described the redness and tenderness that she found which, in her view, indicated that injury or trauma had occurred. The doctor stated that "[i]t would be unusual" to find such injury or trauma in a woman who had had consensual sex, and agreed that the injury to the complainant "could not have resulted from consensual sex."

Bobb took the stand at trial in his own defense, after presenting three other witnesses, and stated that the following events took place. He and the complainant had consensual sex on June 7, 1994. During the period from October 1993 to June 1994, she came to his room "on her own" approximately ten times while they were living in the same rooming house. He had sex with the complainant on June 2, 1994, and approximately four times after that. He would give the complainant money, from $20 to $80 after sex. He gave her $80 on June 7. During cross-examination, the government attacked Bobb's credibility with the transcript of the § 22–4122 pre-trial testimony. Initially, counsel for Bobb objected on the ground of "improper impeachment," essentially because government counsel did not provide a page number or a verbatim quote from the § 22–4122 transcript. The court agreed with defense counsel that the impeachment was improper and admonished the prosecutor to use the proper procedure for impeachment while using a transcript of prior testimony. Counsel for the government continued to use the § 22–4122 pre-

trial testimony in the cross-examination of Bobb relating to his past contacts with the complainant. When the government's questions began to focus on June 7, 1994, and Bobb's assertion that the complainant initiated sex with him "[f]or old time's sake," defense counsel objected, stating to the court: "I'm not objecting to impeachment; I am objecting because the foundation is incorrect." After discussion, and when the prosecutor indicated that she would move on, the trial judge told defense counsel that he could "try to rectify it on redirect." Later, defense counsel posed another objection to a question based on Bobb's pre-trial testimony, stating: "I try not to object on my client's cross-examination, but this isn't impeachment." After a bench conference, the trial judge ordered government counsel to "move on" before Bobb responded to the question posed.

## ANALYSIS

■ Bobb first argues that the trial court erred by compelling him to testify at the pre-trial hearing that he engaged in consensual sex with the complainant, and by allowing the government to cross-examine him there on matters beyond the scope of his direct testimony. The record before us reveals no merit to the first part of Bobb's contention. Bobb filed the required motion indicating his intent to present evidence at trial of consensual sex with the complainant, § 22–4122(b)(1).[4] Despite the fact that the attached written proffer was general in substance, did not allege consent on June 7, 1994, and offered no facts showing consent on that date, the trial judge afforded Bobb an opportunity to present evidence of the complainant's consent to have sex with him on June 7, 1994, at a pre-trial hearing that was closed to the public. Contrary to Bobb's asser-

tion, the trial judge did not compel him to testify at the hearing. After the complaining witness was called by the defense and completed her testimony, during which she denied both consensual sex with Bobb and receipt of money in exchange for sex, the trial judge asked defense counsel: "Do you have any more witnesses?" Defense counsel responded: "Yes, your Honor. We call the defendant. I note my objection though." We have stated previously that: "Objections must be made with reasonable specificity; the judge must be fairly apprised as to the question on which he is being asked to rule." *Hunter v. United States*, 606 A.2d 139, 144 (D.C.), *cert. denied*, 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992). Here, defense counsel gave no reason for noting an objection,[5] and it simply is not clear why the objection was made. In any case, nothing in the pre-trial transcript even remotely hints that the trial court compelled Bobb to testify at the hearing. Bobb could have rested on his written offer of proof but chose not to, obviously fearing an adverse ruling on its admissibility if he did not support it with live testimony. Neither the statute, nor any constitutional provision, prohibits putting him to that choice. *See, e. g., Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 118 S.Ct. 1244, 1252–53, 140 L.Ed.2d 387 (1998).

■ We review the second part of Bobb's assertion, that the trial court erred by allowing cross-examination of him at the pre-trial hearing beyond the scope of his direct testimony, for abuse of discretion. *See Sherrod v. United States*, 478 A.2d 644, 652 (D.C.1984) ("[A]llegations of error relating to the scope of examination ... are matters within the sound discretion of the trial court...."). Furthermore, as the Supreme Court stated in

4. Bobb makes no constitutional challenge as such to the notice and advance proffer requirements of § 22–4122.

5. For example, Bobb did not raise the constitutional Fifth Amendment privilege against

self-incrimination. To the extent that he seeks to raise it on appeal with respect to the pre-trial hearing, we decline to entertain it. *See Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22.

*United States v. Havens,* 446 U.S. 620, 626–27, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980): "It is essential ... to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth." Thus, it has long been held that: " '[A] defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.' " *Wesley v. United States,* 547 A.2d 1022, 1025 (D.C.1988) (quoting *McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)).

In this case, Bobb testified at the pretrial hearing that he had had consensual sex with the complaining witness "[a]pproximately four or five times" before June 7, 1994. His direct testimony was quite limited, consuming less than four pages of the pre-trial transcript. His cross-examination was more extensive. The first question posed to Bobb on cross-examination was: "Now, did you have sex with [the complainant] on June 7th of 1994?" There was no objection to the question, and Bobb responded: "Yes, I did." When the prosecutor asked Bobb what time he got off from work on June 7, 1994, Bobb's counsel objected, stating: "I think this is beyond the scope, your Honor." The trial judge overruled the objection and the prosecutor continued to ask Bobb detailed questions about the events of June 7, 1994, over the objections of defense counsel.

■ While the cross-examination of Bobb was extensive compared with his direct examination, we cannot say that the trial court abused its discretion in allowing the cross-examination to continue. Bobb

testified generally that he had consensual sex with the complainant several times during an eight-month period stretching from October 1993 to June 1994, but did not specifically mention the date of June 7, 1994. Given this testimony, the prosecutor was entitled to explore Bobb's assertions as to the dates on which the alleged consensual acts took place, including June 7, 1994, and the circumstances under which they allegedly unfolded. As we said in *Wesley, supra:* "[W]hen a defendant testifies to certain facts or issues during his direct examination, he 'open[s] the door' to further inquiry into those matters on cross-examination." *Id.* at 1025 (quoting *Curry v. United States,* 322 A.2d 268, 269 (D.C.1974)). "The extent and scope of that cross-examination are subject to the broad discretion of the trial judge." *Id.* (citations omitted). For the reasons stated, we see no abuse of discretion by the trial judge at the pre-trial hearing; the government's cross-examination of Bobb was "reasonably related to the subject matter of his direct examination." *Wesley, supra,* 547 A.2d at 1025 (quoting *McGautha, supra,* 402 U.S. at 215, 91 S.Ct. 1454).

■ Bobb also argues that the trial court violated his Fifth Amendment constitutional privilege against self-incrimination by allowing "in depth cross examination" of him by the government at trial, based on his testimony at the § 22–4122 hearing. Since Bobb did not raise a Fifth Amendment challenge to the use of the pre-trial hearing transcript at trial,[6] we review his contention for plain error. *See Hunter, supra,* 606 A.2d at 144; *see also Baxter v. United States,* 640 A.2d 714, 717 (D.C. 1994) ("We will reverse for plain error only if [the trial court's error] should have been 'obvious and readily apparent' to the trial

---

6. Bobb asserted that § 22–4122 requires that the transcript of the pre-trial hearing remain sealed. We see nothing in § 22–4122 which precludes use of the hearing transcript at trial because it has been sealed following the pre-trial hearing. In addition, Bobb complained that under § 22–4122, the pre-trial hearing

should have been held "in chambers." Although the statute specifies that the pre-trial hearing should take place "in chambers," the spirit of this requirement was met when the trial judge closed the pre-trial hearing to the public.

judge, ... [and] a miscarriage of justice would otherwise result from the judge's failure to intervene on her [or his] own initiative.") (quoting *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)) (other citation omitted).

We note, first, that nothing in § 22–4122 precludes the use at trial, for impeachment purposes, of legally obtained pre-trial testimony. Second, in the case before us, the government did not use the pre-trial transcript, in its case in chief, as direct evidence of the complaining witness' lack of consent to sex with Bobb; rather it was used to impeach Bobb's credibility. *See Bourn v. United States,* 567 A.2d 1312, 1316 (D.C.1989) ("Having taken the witness stand, appellant was obliged to testify truthfully or face the consequences, and he cannot complain when his suppression testimony was used, not as direct evidence of guilt, but to impeach his trial testimony."). Thus, this case is not controlled by *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), on which Bobb relies, because that case turned on the government's use, as direct evidence in its case in chief, of defendant's testimony at a pre-trial suppression hearing. Consequently, in the absence of statutory preclusion, we see nothing in the area of constitutional Fifth Amendment jurisprudence which prevents the use of legally obtained statements for impeachment purposes.

Here, the prosecutor used Bobb's pre-trial testimony to show inconsistencies between Bobb's direct testimony at trial and his pre-trial hearing testimony. "Where the impeachment is designed to correct contradictory statements in the defendant's direct testimony at trial, the burden on a defendant's right to testify at trial, as a result of the likely possibility that prior inconsistent testimony from a suppression hearing will be introduced as impeachment at trial, is outweighed by the necessity of probing the trustworthiness of evidence at trial." *Bourn, supra,* 567 A.2d at 1316 (footnote omitted). *Cf. Harris v.*

*New York,* 401 U.S. 222, 225–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Thus, Bobb falls well short of demonstrating plain error in the admission of the earlier testimony for impeachment. *See Olano, supra.* Although the case turned on the jury's assessment of the credibility of Bobb and the complaining witness, reasonable jurors could infer that, if believed, the testimony Dr. Knowles–Jonas, and that of the Secret Service agent and the complaining witness' boyfriend as to how they found the complainant screaming and crying, and crouched in a fetal position, was inconsistent with consensual sex.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court, and conclude that the trial court did not: (1) compel Bobb to testify at the § 22–4122 hearing; or (2) abuse its discretion at the pre-trial hearing by allowing the government to cross-examine Bobb regarding the details of his assertions of consensual sex with the complainant. Furthermore, Bobb has not shown plain error in the government's use, at trial, of his pre-trial hearing testimony to impeach his credibility.