97 P.3d 1004

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**Jason McELROY, Respondent–Appellant.**

No. 25190.

Supreme Court of Hawai'i.

Sept. 23, 2004.

Loren J. Thomas, Deputy Prosecuting Attorney, for petitioner-appellee, on the writ.

Edward K. Harada, Deputy Public Defender, for respondent-appellant.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; ACOBA, J., Dissenting.

Opinion of the Court by MOON, C.J.

On August 2, 2004, this court granted the application for writ of certiorari by petitioner-appellee State of Hawai'i (the prosecution), wherein it requests that this court review the June 29, 2004 published opinion of the Intermediate Court of Appeals (ICA) vacating Jason McElroy's June 7, 2002 judgment of conviction and sentence by the Circuit Court of the First Circuit, the Honorable Richard K. Perkins presiding. The prosecution contends that the ICA erred in holding that a mistake or error by the deputy prosecuting attorney [hereinafter, trial DPA] deprived McElroy of a fair and impartial trial. For the following reasons, we reverse the holding of the ICA and affirm the judgment of conviction and sentence of the first circuit court.

## I. BACKGROUND

On November 6, 2001, McElroy was indicted on four counts of sexual assault in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 707–731 (Supp.2001) (Counts I through IV) and one count of sexual assault in the fourth degree, in violation of HRS § 707–733 (1993) (Count V). McElroy was arrested the following day, and bail was fixed in the amount of $25,000.

### A. Motion for Supervised Release

On November 26, 2001, McElroy moved for supervised release or, in the alternative, a reduction of bail. On December 18, 2001, the Department of Public Safety, Oahu Intake Service Center, filed a recommendation with the court regarding McElroy's motion that included the following:

According to the National Crime Information Center, the defendant was arrested in Chicago, Illinois on April 21, 1999, for Possession of Cannabis, and on December 14, 1998, for Possession of Controlled Substance. There was no conviction information reported.

Supervised release is recommended under the attached terms and conditions for the following reasons: the defendant appears to be gainfully employed with the U.S. Navy; U.S. Naval authorities has [sic] assigned him to temporary shore duty and will make every effort to ensure that he attends all court hearings; and, his criminal record does not include any arrests or convictions for serious offenses.

Attached to the Oahu Intake Service Center's recommendation is a document entitled "Bail Form" addressed to the Oahu Intake Service Center from the Department of the Prosecuting Attorney, stating, *inter alia*, "Defendant has a record in Illinois." The Bail Form is dated November 2, 2001 and bears the name of the trial DPA, but is unsigned.

A hearing on the defense's motion for supervised release was held on December 26, 2001. The motion for supervised release was granted subject to conditions included in and attached to the order.

### B. Defense Motion in Limine

The defense filed a first motion in limine seeking, *inter alia*, to exclude evidence of prior bad acts pursuant to Hawai'i Rules of Evidence (HRE):

4. Declarant requests an Order excluding and precluding from use at trial the following evidence:

(a) Any testimonial or documentary evidence or reference by any State witnesses relating to any prior allegations of criminal acts by Defendant; and

(b) Testimonial or documentary evidence relating to any other "bad acts" involving the defendant, or matters which should nevertheless be excluded as irrelevant under HRE 402, or as unfairly prejudicial under HRE 403 . . .

(c) Testimonial or documentary evidence relating to "bad acts" type matters involving the defendant

for which the State has not provided reasonable notice of intent to use at trial pursuant to Hawaii Rules of Evidence Rule 404(b). If the State has not provided the substance of any "bad acts" by the defendant pursuant to Hawaii Rules of Penal Procedure Rule 16(b)(ii), the defense has either has [sic] no knowledge of such "bad acts", or has assumed it will not be introduced at trial. . . .

The prosecution had no objections to the above-quoted sections of the defense's motion, and the court granted the motion as to those sections.

### C. *Jury Trial*

Trial commenced on March 10, 2002, during which McElroy testified on his own behalf. Before explaining the events leading to his arrest on November 1, 2001, McElroy had the following exchange with his counsel:

Q Mr. McElroy, after you graduated from high school, what did you do?

A I joined the Navy.

Q Why did you join the Navy?

A Because to make my family proud. And I was doing bad and I wanted to change and stuff like that.

Q So after high school, you thought it would be a positive thing for you to join the Navy?

A Yes.

Q And what did that give you the chance to do?

A Go to college and see the world and just learn something new.

McElroy went on to explain what had occurred from the afternoon of October 31, 2001 through the morning of November 1, 2001.

The following interaction took place on cross-examination:

Q [THE PROSECUTION] You like the Navy?

A [McElroy] Yes.

Q What do you like about it?

A It's something new than [sic] what I was. And so it's got its bad days. Don't get me wrong. But it's a new experience.

Q Okay. You're currently an E–1; is that correct?

A Yes.

Q And you're trained as a cook in the Navy?

A Yes.

Q You told us earlier that you enjoy it and that the Navy might give you an opportunity to go to college, which you'd like to do; is that right?

A Yes.

Q You also told us that you joined the Navy to change; is that correct?

A Yes.

Q Change from what?

A Well, when I was back home, I was doing bad. Well, I was hanging with the wrong people—drugs and gang-banging and stuff like that. And I got tired of doing that—

[DEFENSE COUNSEL]: Your Honor, may we approach?

THE COURT: Yes.

(The following proceedings had at the bench:)

[DEFENSE COUNSEL]: Judge.

THE COURT: Hold on. Okay.

[DEFENSE COUNSEL]: Well, Judge, I have to move for a mistrial. I didn't anticipate that answer from Mr. McElroy. And I believe he violated the motion in limine regarding bad acts. It was in response to a question posed.

[THE PROSECUTION]: Your Honor, I was completely unaware of anything. On direct, the defense asked, why did you join the Navy, and he said to change. So I simply just followed that up. I didn't know of any bad acts. I just followed it up with what [defense counsel] asked on direct. I was completely unaware of any bad acts. I don't have a rap for defendant. I don't know anything about him. But the defense during his opening questions to him asked why he joined the Navy.

THE COURT: I'm going to instruct the jury to disregard it. I'm going to take the motion for mistrial under advisement.

[THE PROSECUTION]: And I'll move along.

THE COURT: You better.

(Bench conference concluded.)

THE COURT: Ladies and gentlemen, the court is going to strike the defendant's last answer. Whatever the defendant did prior to his joining the Navy is not relevant to any issue before this jury. So you will disregard that. It shouldn't have been before you at all.

Later that day, the trial court denied the defense motion for a mistrial "without prejudice to [the defense] raising it again ... depending on what occurs after this. But we've come this far and I have instructed the jury to disregard it."

On March 18, 2002, the trial court received a communication from the jury indicating that it had reached a unanimous decision on two counts of the indictment. The jury indicated that it was not unanimous as to all five counts and that further deliberation was not reasonably likely to result in a unanimous verdict on the remaining counts. As to Count I, the jury found McElroy guilty of the included offense of sexual assault in the third degree. As to Count V, the jury found McElroy not guilty of sexual assault in the fourth degree. Upon being polled by the court, each juror agreed that the verdicts reflected their individual determinations of the facts.

## D. *Appeal Before the ICA*

On appeal, the defense claimed that the trial court erred in denying his motion for a mistrial, arguing that prosecutorial misconduct during cross-examination of McElroy impaired his right to a fair trial. Specifically, the defense argued:

When the [trial DPA] cross-examined [McElroy] about his reason for joining the Navy, the [prosecution] wanted to exploit [McElroy's] answer on direct examination that he was doing "bad" and wanted to change. The [trial DPA's] question was directed at exploring and exploiting his

prior "bad" conduct in high school—and to this extent, the questions posed by the [prosecution] were intended to elicit evidence in direct violation of the trial court's pre-trial ruling.

The prosecution responded that the trial DPA's question on cross-examination "followed up on [McElroy's] testimony on direct. There was nothing improper or suggestive about the question, it did not naturally call for such a response nor did it infer such a response." The prosecution also argued that there was no evidence that the trial DPA intentionally violated the motion in limine and that McElroy volunteered the unfavorable information about his past.

The majority opinion of the ICA agreed with McElroy, concluding "that McElroy's answer was not a 'volunteered statement' because a defendant's relevant answer in reasonable response to a question is not a 'volunteered statement.'" Op. at 387, 98 P.3d at 258, 2004 WL 1475447 (brackets omitted). As noted *supra,* the trial DPA asked on cross-examination, "Change from what?" The ICA reasoned that the prosecution's question "asked McElroy to state the specifics of his 'doing · bad' and those specifics included McElroy's prior criminal activity and thereby created a strong likelihood of introducing evidence in violation of the suppression order." Op. at 389, 98 P.3d at p. 260, 2004 WL 1475447. The ICA opined that the trial DPA's question was clearly improper, stating:

This questioning had no more than the following two purposes: (a) repeating McElroy's "doing bad" testimony; and/or (b) disclosing evidence that would violate the suppression order. If the purpose was (a), the questioning was irrelevant, duplicative, and superfluous. If the purpose was (b), it violated the suppression order and the rule of evidence stated in *State v. Pulawa,* [62 Haw. 209, 614 P.2d 373 (1980)].

Op. at 389, 98 P.3d at 260, 2004 WL 1475447. However, the ICA also concluded that "the cross-examination that led to the violation of the court's suppression order was the [trial DPA's] mistake/error, not 'a dishonest act or an attempt to persuade the court or jury by

use of deceptive or reprehensible methods.'" Op. at 390, 98 P.3d at 261, 2004 WL 1475447 (citation omitted). The ICA vacated McElroy's conviction and sentence, holding that a "reasonable possibility exists that the prejudicial testimony that resulted from the [trial DPA's] prosecutorial mistake/error could have contributed to McElroy's conviction and, therefore, denied McElroy's right to a fair and impartial trial." Op. at 391, 98 P.3d at 262, 2004 WL 1475447. The prosecution timely filed an application for writ of certiorari, which, as previously indicated, this court granted on August 2, 2004.

## II. STANDARDS OF REVIEW

### A. Review of a Decision by the ICA

The acceptance or rejection of an application for writ of certiorari is discretionary. HRS § 602-59(a) (1993). In deciding whether to grant a petition for writ of certiorari, this court reviews the decision of the ICA for (1) grave errors of law or of fact or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictate the need for further appeal. HRS § 602-59(b) (1993).

### B. Prosecutorial Mistake or Error

■ A mistake or error by the prosecution is reviewed under the harmless beyond a reasonable doubt standard applied to prosecutorial misconduct. Thus, an appellate court examines the record to determine whether there is a reasonable possibility that the error complained of may have contributed to the defendant's conviction. See State v. St. Clair, 101 Hawai'i 280, 286, 67 P.3d 779, 785, reconsideration denied, 101 Hawai'i 420, 70 P.3d 646 (2003). Factors to consider in making this determination include: (1) the nature of the prosecutor's conduct; (2) the promptness or lack of a curative instruction; and (3) the strength or weakness of the evidence against the defendant. See State v. Wakisaka, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003).

### C. Denial of a Motion for Mistrial

■ The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion. State v. Loa, 83 Hawai'i 335, 349, 926 P.2d 1258, 1272 (citations omitted), reconsideration denied, 83 Hawai'i 545, 928 P.2d 39 (1996). "The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." State v. Ganal, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996) (quoting State v. Furutani, 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994) (internal quotation marks omitted)).

State v. Lagat, 97 Hawai'i 492, 495, 40 P.3d 894, 897 (2002).

## III. DISCUSSION

■ In its application for a writ of certiorari, the prosecution contends that the ICA erred in determining that it was prosecutorial mistake or error for the trial DPA, on cross-examination, to ask a question that "created a strong likelihood" of eliciting evidence excluded by the defense's motion in limine. We agree.

■ Initially, a defendant who takes the stand in his own behalf is subject to cross-examination like any other witness. State v. Pokini, 57 Haw. 17, 22, 548 P.2d 1397, 1400 (1976). HRE Rule 611(b) (1993) states, "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." The rules of evidence do "not limit cross-examination to the same acts and facts to which a witness has testified on direct examination. *Rather, the proper scope of cross-examination includes full development of matters broached on direct examination, including facts reasonably related to matters touched on direct.*" State v. Napulou, 85 Hawai'i 49, 57, 936 P.2d 1297, 1305 (App.) (emphasis added) (citations, brackets, internal quotation marks, and ellipsis points omitted), cert. de-

*nied,* 85 Hawai'i 81, 937 P.2d 922 (1997). Thus, "[a]n accused may be cross-examined as to all matters which he himself has brought up on direct examination. The cross-examination of matters which were addressed in direct-examination is not objectionable, even if the answers affect a witness' credibility and character." *State v. Taylor,* 333 S.C. 159, 508 S.E.2d 870, 878 (1998) (internal quotation marks and citations omitted); *see also Bobb v. United States,* 758 A.2d 958, 963 (D.C.2000) ("When a defendant testifies to certain facts or issues during his direct examination, he 'opens the door' to further inquiry into those matters on cross-examination." (Brackets and citations omitted.)), *cert. denied,* 531 U.S. 1099, 121 S.Ct. 832, 148 L.Ed.2d 713 (2001).

In *Roman v. State,* 245 Ga.App. 225, 537 S.E.2d 684, 687 (2000), the defendant argued on appeal that the trial court improperly allowed the prosecution to cross-examine him about his prior criminal record. The defendant was indicted on multiple counts of armed robbery, and multiple victims identified the defendant as the perpetrator. *Id.* at 686.

> With regard to his identification by the victims, [the defendant] responded [on direct examination], "I don't know why they picked me because, I guess because I been in trouble before; and which I have. I don't deny that. But I'm not the person." Then, on cross-examination, the [prosecution] asked [the defendant] to explain this statement and asked him about his past criminal record.

*Id.* at 687. The Court of Appeals of Georgia held:

> Assuming [the defendant] did not, merely by volunteering that he had been in trouble before, put his character "in issue" ... so as to permit rebuttal by the [prosecution], he nevertheless raised an ˉissue which may be fully explored by the [prosecution] on cross-examination. The [prosecution], like any other party, has the right

to conduct a thorough and sifting cross-examination of a witness as to any material issue. The [prosecution] had the right to pursue the specifics of the topic of [the defendant's] past trouble which [he] had introduced. [The defendant] introduced this material issue and the [prosecution] was entitled to explore it on cross-examination.

*Id.* at 688 (quoting *Wilkey v. State,* 215 Ga. App. 354, 450 S.E.2d 846, 847–48 (1994)) (brackets and ellipsis points omitted).

The facts in *Roman* are strikingly similar to those in the present case. Here, McElroy stated on direct examination that he had joined the Navy because he "was doing bad and ... wanted to change and stuff like that." He later stated, on cross-examination, that he liked the Navy because it was "something new than [sic] what I was. And so it's got its bad days. Don't get me wrong. But it's a new experience." As in *Roman,* McElroy introduced the issue of his past when he volunteered that he had been "doing bad" and that his life in the Navy was "something new than [sic] what I was." Thus, we hold that the ICA gravely erred in determining that the trial DPA's question during cross-examination amounted to prosecutorial mistake or error because the prosecution was entitled to develop the issue that McElroy himself broached on direct examination and again on cross-examination.[1] *See Napulou,* 85 Hawai'i at 57, 936 P.2d at 1305. Accordingly, the trial court did not abuse its discretion in denying the defense's motion for a mistrial.

## IV. *CONCLUSION*

Based on the foregoing, we reverse the opinion of the ICA and affirm the judgment of conviction and sentence of the Circuit Court of the First Circuit.

Dissenting Opinion by ACOBA, J.

I must respectfully disagree with the majority's holding that the Intermediate Court

---

1. Additionally, we agree with the dissenting opinion by Judge Nakamura that the trial DPA's "general question ... did not call for nor require the defendant to answer that he had been 'hanging with' people engaged in 'drugs·and gang banging.' The defendant could have given a truthful answer that did not reveal these unfavorable details." Dissenting Op. at 393, 98 P.3d at 264, 2004 WL 1475447 (citing *Commonwealth v. Roderick,* 429 Mass. 271, 707 N.E.2d 1065, 1068 (1999)).

of Appeals (the ICA) committed grave error in requiring a new trial herein. On certiorari we review the ICA's decision for:

> (1) grave errors of law or of fact, or (2) obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of such errors or inconsistencies dictating the need for further appeal.

HRS § 602–59(b) (1993).

## I.

To reiterate, on direct examination Respondent/Defendant–Appellant Jason McElroy (McElroy) was questioned by his defense counsel as follows:

> Q: Why did you join the Navy?
>
> A: Because to make my family proud. *And I was doing bad and wanted to change* and stuff like that.

(Emphasis added.) After the defense completed its direct examination of McElroy, the deputy prosecuting attorney cross examined McElroy in the following manner:

> Q: You also told us you joined the Navy to change; is that correct?
>
> A: Yes.
>
> Q: *Change from what?*
>
> A: Well, when I was back home, I was doing bad. Well, I was hanging with the wrong people—drugs and gang-banging and stuff like that. And I got tired of doing that.

At that point, defense counsel objected and moved for a mistrial. He also stated that Petitioner/ Plaintiff–Appellee State of Hawai'i (the prosecution) had violated the motion in limine. On appeal, the prosecution argued that (1) "the question did not naturally call for such a response nor did it infer such a response," and (2) McElroy volunteered the unfavorable information.

The ICA's majority responded appropriately to the prosecutor's argument as presented on appeal. The ICA stated that McElroy's answer was a relevant answer in reasonable response to the prosecutor's question and "that McElroy's answer was not a 'volunteered statement' because a defendant's relevant answer in reasonable re-

sponse to a question is not a volunteered statement[.]" Op. at 387, 98 P.3d at 258, 2004 WL 1475447. The ICA's reading of the testimony is buttressed by a plain reading of the transcript and is not obviously wrong.

The majority agrees with the ICA dissent that the trial DPA's "general question," "Change from what?" "did not call for nor require the defendant to answer that he had been 'hanging with' people engaged in 'drugs and gang banging.' The defendant could have given a truthful answer that did not reveal the unfavorable details." Majority opinion at 357, n. 1, 97 P.3d at 1009 n. 1 (quoting ICA's dissent at 393, 98 P.3d at 264, 2004 WL 1475447) (citation omitted). But as the ICA majority demonstrated, the "general question" cannot be viewed in isolation.

The record reflects the prosecution knew of prior bad acts inasmuch as the "Bail Form" addressed to the Oahu Intake Service Center from the Department of the Prosecuting Attorney, stated, *inter alia*, "Defendant has a record in Illinois[,]" majority opinion at 353, 97 P.3d at 1005, was dated November 2, 2001, and bore the name of the trial DPA, although unsigned. Apparently, in view of this information, the defense obtained an in limine order from the court "precluding from use at trial" "[t]estimonial or documentary evidence relating to any other 'bad acts' involving the defendant, or matters which should nevertheless be excluded as irrelevant under HRE 402, or as unfairly prejudicial under HRE 403."

As the ICA noted, the cross-examination elicited "the specifics of his 'doing bad' and those specifics included McElroy's prior criminal activity[;]" it "thereby created the strong likelihood of introducing evidence in violation of the [in limine] order." Op. at 389, 98 P.3d at 260, 2004 WL 1475447. This cannot be reasonably disputed. The ICA pointed out that this questioning would have had "no more than" two effects: "(a) repeating McElroy's 'doing bad' testimony; and/or (b) disclosing evidence that would violate the [in limine] order." Op. at 389, 98 P.3d at 260, 2004 WL 1475447. According to the

ICA, as to "(a), the questioning was irrelevant, duplicative, and superfluous[,]" and as to "(b), it violated the [in limine] order[.]" Op. at 389, 98 P.3d at 260, 2004 WL 1475447. The ICA's conclusion that the prosecution's inquiry into the "change" from "bad stuff" was irrelevant and solicitous of bad acts evidence, was one that it could draw within its proper scope of review. In light of the foregoing, it cannot be said that the ICA's conclusion that such questioning was error was without a basis in law and fact.

## II.

In vacating McElroy's conviction and sentence, the ICA held that the prosecutor's error leading to McElroy's statement about drugs and gangs was not harmless beyond a reasonable doubt. In concluding that "[a] reasonable possibility exist[ed] that the prejudicial testimony that resulted from the trial [DPA's] prosecutorial mistake/error could have contributed to McElroy's conviction and, therefore, denied [his] right to a fair and impartial trial[,]" Op. at 391, 98 P.3d at 262, 2004 WL 1475447 (citing *State v. St. Clair*, 101 Hawai'i 280, 286, 67 P.3d 779, 785 (2003)), the ICA applied the correct reasonable doubt standard: whether the error was harmless beyond a reasonable doubt in light of (1) the nature of the prosecutor's conduct, (2) the promptness or lack of a curative instruction, and (3) the strength or weakness of the evidence against the defendant. *State v. Wakisaka*, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003).

Assessing the strength of the prosecution's case, the ICA pointed out that "the principal issue at McElroy's trial was whether C.E. [ (the complaining witness) ] consented to having sex with him," the case "revolve[d] around the credibility of the only two parties in the bedroom at the time the alleged sexual assault took place—C.E. and McElroy[,]" "there were no independent eyewitnesses to the alleged assault and the Prosecutor's case against McElroy depended heavily on C.E.'s testimony[,]" "the jury was only able to agree to one guilty verdict—Count I in the lesser included third degree[,]" and "the jury found McElroy not guilty on Count V, and was unable to reach a verdict on Counts II, III, and IV." Op. at 391, 98 P.3d at 262, 2004 WL 1475447 (internal quotation marks, citations, and brackets omitted). All of these are relevant matters contained in the record.

One may not necessarily agree with the ICA's ultimate holding. However, in light of the ICA's reasoning and the relevant facts, I do not believe that it can be concluded as a matter of law (1) that in the exercise of its appellate review power, the ICA "*gravely* erred" in law or fact or (2) that its decision contained "*obvious* inconsistencies" with the relevant case law.