**NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-25-0000473**
**29-APR-2026**
**08:05 AM**
**Dkt. 80 SO**

NO. CAAP-25-0000473

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

IN THE INTEREST OF A.M., S.M., and M.M.

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT
(CASE NO. FC-S 22-00027)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Presiding Judge, Wadsworth and Guidry, JJ.)

Father-Appellant (**Father**) appeals from the "Amended Order Terminating the Parental Rights of [Mother-Appellee (**Mother**)] and [Father] and Awarding Permanent Custody ([Hawaii Revised Statutes (**HRS**) Chapter] 587A" (**Termination Order**), entered by the Family Court of the Fifth Circuit (**family court**) on June 9, 2025.[1]  The Termination Order terminated Mother's[2] and

---

[1]     The Honorable Stephanie R.S. Char presided.

[2]     Mother is a nominal appellee to this appeal.

Father's respective parental rights to their minor children A.M., S.M., and M.M. (collectively, the **Children**).

Father raises four points of error on appeal, contending that the family court erred: (1) because findings of fact (**FOFs**) 1(c), 1(f), 41(a), 45, 50, and 87 are clearly erroneous; (2) "by allowing questioning beyond the scope of direct examination and questioning in an impermissible manner"; (3) "by refusing to allow questioning consistent with HRS § 587A-21(d) and [the] parents' due process rights"; and (4) "in terminating [the] parents' parental rights and adopting the permanent plan, as there was not clear and convincing evidence that the permanent plan was in the [C]hildren's best interests."

Upon careful review of the record, briefs, and relevant legal authorities, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows:

(1) Father challenges portions of FOFs 1(c), 1(f), 41(a), 45, 50, and 87[3] of the Termination Order. "[FOFs] are

---

[3]     The portions of these FOFs that Father challenges are as follows:

[1(c).]  The proposed permanent plan, dated January 21, 2025 is in the best interests of the [C]hildren.

. . . .

[1(f).]  Under the circumstances that are presented in this case, DHS has made reasonable efforts to finalize the permanency plan which in this case is permanent out of home placement.

(continued . . .)

reviewed under the 'clearly erroneous' standard." In re JK, 149 Hawaiʻi 400, 406, 491 P.3d 1179, 1185 (App. 2021) (citation omitted).  To the extent some of these paragraphs can be construed as mixed questions of fact and law, "we review [mixed questions of fact and law] under the 'clearly erroneous' standard because the court's conclusions are dependent on the

---

[3](. . . continued)

  . . . .

  [41(a).] The court met with [A.M.] on November 8, 2024 in an in chambers interview. . . .  This 8-year old child had an incredible grasp on what was happening (and has happened) to her and her siblings being in foster care . . . .  She opined that in order to have a good life and have kids, and have good relationships, adoption would be her path.  She informed the court that her siblings felt the same way.  She said she loves her parents, but she needed this case to end.

  . . . .

  45[.] On January 30, 2025, . . . [t]he [guardian ad litem (**GAL**)] reported that all three children were in agreement with adoption. . . .  Mother and Father made a joint request that the court interview and re-interview the three children regarding their feelings about permanent out of home placement, adoption and guardianship and any undue influence by the GAL. . . .

  . . . .

  50[.] On April 29, 2025, . . . [a]ttorneys were ordered to submit written closing arguments. . . .

  . . . .

  87[.] The [C]hildren have been consulted, in an age appropriate manner, about the proposed permanency and/or transition goal.

(Citation omitted.)

3

facts and circumstances of each individual case." Id. (citation omitted).

We conclude that paragraphs 1(c), 1(f), 41(a), 45, and 87 are supported by the record evidence and are not clearly erroneous. Moreover, they are supported by FOFs that are unchallenged by Father, and therefore binding on this court. See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 459, 40 P.3d 73, 82 (2002) ("[U]nchallenged factual findings are deemed to be binding on appeal[.]").

We further conclude that the alleged error with regard to FOF 50 is harmless. Father appears correct that the "attorneys were ordered to submit proposed [FOFs] and conclusions of law [(**COLs**)], not closing arguments." Nevertheless, Father fails to demonstrate that he was prejudiced in any way by this error.

Father's first point of error lacks merit.

(2) Father contends that the family court erred by allowing "leading questions exceeding the scope of direct in a manner that prejudiced [Father]," and "extensive cross examination of a witness that was not adverse to the [GAL] in violation of [Hawaii Rules of Evidence (**HRE**) Rule] 611(c)."

Father fails to identify the specific witnesses that he alleges were improperly examined. Based on the portions of the transcript that Father cites, Father appears to contend that

Petitioner-Appellee State of Hawaiʻi Department of Human Services' (**DHS**) counsel's cross-examination of Father went "beyond the scope of direct examination."  Father also appears to contend that the GAL asked "leading[-]type questions" during its cross-examination of social worker Korin Ann Wakuta-Kenney (**Wakuta-Kenney**), in violation of HRE Rule 611(c).

"The scope of cross-examination is generally within the sound discretion of the court."  State v. Napulou, 85 Hawaiʻi 49, 57, 936 P.2d 1297, 1305 (App. 1997) (citation omitted).  HRE Rule 611 states, in relevant part,

> (b) Scope of cross-examination.  Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.
>
> (c) Leading questions.  Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony.  Ordinarily, leading questions should be permitted on cross-examination.  When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

In discussing HRE Rule 611, the Hawaiʻi Supreme Court has explained that,

> The rules of evidence do "not limit cross-examination to the same acts and facts to which a witness has testified on direct examination. *Rather, the proper scope of cross-examination includes full development of matters broached on direct examination, including facts reasonably related to matters touched on direct.*"

State v. McElroy, 105 Hawaiʻi 352, 356, 97 P.3d 1004, 1008 (2004) (quoting Napulou, 85 Hawaiʻi at 57, 936 P.2d at 1305).

5

The family court did not abuse its discretion by allowing DHS counsel some leeway with regard to the scope of its cross-examination of Father. And it did not violate HRE Rule 611(c) by allowing the GAL to ask Wakuta-Kenney leading questions on cross-examination; HRE Rule 611(c) provides that "[o]rdinarily, leading questions should be permitted on cross-examination."

Father's second point of error lacks merit.

(3) Father contends that the family court erred in denying Father's request to question the Children, thereby violating his due process rights. "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. Thus, we review questions of constitutional law under the right/wrong standard." In re J.M., 150 Hawai'i 125, 137, 497 P.3d 140, 152 (App. 2021) (quoting State v. Ui, 142 Hawai'i 287, 292, 418 P.3d 628, 633 (2018)).

"It is well settled that the fundamental liberty interest in the care, custody, and control of one's children may not be changed by the state without due process of law." In re Doe Child., 85 Hawai'i 119, 123, 938 P.2d 178, 182 (App. 1997) (citation omitted). However, "when the rights of parents and the welfare of their children are in conflict, the welfare of

the minor children must prevail." Id. at 125, 938 P.2d at 184 (citations omitted).

"In determining whether limitations on a child testifying violates a parent's due process rights, the[] Family Court must balance competing interests, including the interest of the parent at stake, the parent's need for the child's testimony, and the best interests of the child." In re K Child., No. CAAP-11-0000805, 2013 WL 6244722, at *3 (Haw. App. Nov. 29, 2013) (SDO) (citations omitted).

Pursuant to HRS § 587A-21(d) (2018), the family court has considerable discretion in determining the circumstances pursuant to which a child may be directed to testify[4]:

> **A child may be directed by the court to testify under circumstances deemed by the court to be in the best interests of the child and the furtherance of justice.** These circumstances may include an on-the-record interview of the child in chambers, with only those parties present during the interview as the court deems to be in the best interests of the child.

(Emphasis added.)

The record reflects that the family court properly exercised its discretion. The family court explained that "[t]he only reason why [it] spoke to [A.M.] in the first place

---

[4] The record reflects that two of the children were eight years old, and one child was seven years old, at the time of the parental termination proceeding. The Children's consent to adoption was therefore not required by statute. See HRS § 587A-33(a)(4) (2018) (requiring the family court to determine whether "[t]he child consents to the permanent plan **if the child is at least fourteen years old**, unless the court consults with the child in camera and finds that it is in the best interest of the child to proceed without the child's consent." (emphasis added)).

is because she requested it." It noted that A.M. "is the youngest child that [the family court] ha[s] ever spoken to," and that "[f]urther interview or second interview with, specifically, [A.M.] would just be repetitive." It further noted that it "[did not] think the other two children are of sufficient age and maturity such that their voice could be heard." In addressing Father's basis for requesting the interview, the family court found that "[n]othing that has occurred in the over two years of this case gives rise, in the [family court's] opinions, to any indication of improper influence on the part of the [Children's] GAL." On these grounds, the family court determined that "it is not in the best interest of the [C]hildren for the [family court] to further interview [A.M.] and interview the other two children."

Father's third point of error lacks merit.

(4) Father contends that the family court erred by finding, by clear and convincing evidence, that the termination of Father's parental rights and the permanent plan was in the best interests of the Children.

HRS § 587A-33 (2018) states, in pertinent part,

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
>     . . . .
>
>     (3) The proposed permanent plan is in the best interests of the child. In reaching this determination, the court shall:

(A)  Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and

(B)  Give greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care[.]

"Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion." In re R Child., 145 Hawaiʻi 477, 482, 454 P.3d 418, 423 (2019) (citations omitted).

The unchallenged FOFs and mixed FOFs/COLs, which are binding upon this court, support the family court's termination of Father's parental rights and permanent plan:

74[.] Father, is unable to currently provide a Safe Family Home for the Children.  He was on HOPE Probation, and was able to participate in work furlough outside of KCCC for a period of time, however he ultimately had his probation revoked and was resentenced to a maximum term of incarceration with a scheduled release date of July 6, 2027.  He remains incarcerated in Saguaro, Arizona.

75[.] It is not reasonable to wait for Father to become willing and able to provide a safe family home for his 3 children after his release from incarceration because although he is eligible for Parole prior to his maximum incarceration date of July 6[,] 2027, his availability earlier is contingent on first being granted parole, and complying with any conditions of parole, before he would be available to work on this Court's CWS Family Service Plan and further time to demonstrate that he can provide a safe family home for the [C]hildren.

76[.] Father has access to online classes at Saguaro Correctional, and testified that he has completed a parenting certificate, however even with completion of available services while incarcerated, it is not reasonable to wait until his release to see if he can

9

demonstrate and implement the skills he gained from the classes available at Saguaro.

77[.] Father, while he was not incarcerated and participating in HOPE Probation on Kauai, participated in visitation with the [C]hildren, and a few UA tests, he did not complete the Court Ordered Psychological Evaluation.

78[.] Even if Father is released on Parole, he would need to complete the psychological evaluation and recommended treatment, and he admitted on 4/29/25, that he was the cause of the problems in the relationship between Mother and Father, which is consistent with Mother's safety issues. According to Mother's Psychological Evaluation, she required Domestic Violence Counseling due to past trauma in her relationship with Father.

79[.] Based on history of limited progress and substantial regression of both Mother and Father, it is not reasonable to delay terminating their parental rights because even if they were both immediately released from incarceration, they would need to demonstrate the ability to maintain their sobriety, and need time to demonstrate the ability to provide a safe family home and the [C]hildren cannot wait for permanency.

80[.] The court has afforded these parents approximately 28 hearings, oftentimes setting status hearings so that the court could have more frequent review of this case. The 28 hearings, were over the span of 28 months, which equates to a hearing each month these [C]hildren were in [foster] care for parents to demonstrate their progress. They have not done so.

81[.] Based on the young age of the [C]hildren, the length of time they have been in foster care, the [C]hildren's own stated frustrations with being in a cycle of foster care and reunification, delaying termination of parental rights and therefore delaying permanency would be harmful to the Children. Delaying permanency is not in the best interest of the [C]hildren.

82[.] Ordering termination of parental rights and establishing a permanent plan for adoption is in the Children's Best Interests, because they have been languishing in foster care for nearly 30 months and the [C]hildren are suffering from the uncertainty of where and with whom they will permanently live. The [C]hildren deserve to remain in a safe and stable home.

83[.] The Court finds that adoption is in the best interest of the [C]hildren, not legal guardianship, for the following reasons:

a. **Permanent** stability for the [C]hildren (with strong emphasis on the testimony that the [C]hildren have spent more time in foster care than in the custody of their parents).

b. Consideration of the [C]hildren's younger ages and need for a permanent and stable home environment, with consistent adult caregivers, who will be consistently present in their day to day living.

c. Consideration of the [C]hildren's ([A.M. and S.M.'s]) wish to be adopted.

d. Adoption would provide the adoptive parent the ability to continue homeschooling without being subject to the Department's policy on Homeschool and future litigation on the matter.

e. Lack of progress of parents in addressing the issues that necessitated removal not just in the present case, but the two prior cases as well.

(Citations omitted.)

"Parents have two years from a child's entry into foster custody to become willing and able to provide a safe family home." In re JH, 152 Hawai‘i 373, 379, 526 P.3d 350, 356 (2023). Father failed to meet this requirement. At the time the family court terminated Father's parental rights, the Children had been in foster custody for 28 months from their date of entry into foster custody.

Father appears to contend that the family court abused its discretion by "refus[ing] to allow questioning of the [C]hildren regarding the permanent plan that was ultimately imposed." Father's contention lacks merit in light of section (3), supra.

For the foregoing reasons, we affirm the Termination Order.

DATED: Honolulu, Hawaiʻi, April 29, 2026.

On the briefs:

Matthew Mannisto,
for Father-Appellant.

Russell K. Goo,
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge