COMMONWEALTH *VS.* PETER P. RODERICK.

Plymouth. March 2, 1999. - April 2, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & IRELAND, JJ.

*Evidence,* Prior conviction, Impeachment of credibility, Rebuttal, Presumptions and burden of proof. *Practice, Criminal,* Required finding, Instructions to jury, Presumptions and burden of proof, Capital case. *Homicide. Robbery.*

At the trial of a murder indictment, the judge properly excluded from evidence the defendant's prior conviction of unlawful possession of a firearm and the prosecutor did not violate that order by asking the defendant on cross-examination whether he had ever before carried or used a firearm; however, when the defendant denied under oath having previously carried or used a gun, the judge correctly allowed evidence of the prior conviction to impeach the defendant. [273-275]

At the trial of indictments for murder and assault with intent to rob, the evidence was sufficient to warrant the judge's denial of the defendant's motion for required findings of not guilty. [275-276]

At the trial of an indictment for murder in the first degree, there was no error in the judge's instructions to the jury on felony-murder [276-277], on malice [277], or on the Commonwealth's burden of proof on provocation (to which the defendant was not entitled) [278-279]; and there was no evidence that would have warranted an instruction on impairment on account of drug use or any other reason. [277-278]

INDICTMENTS found and returned in the Superior Court Department on June 27, 1994.

The cases were tried before *John A. Tierney,* J.

*Michael O'Connell,* Assistant District Attorney, for the Commonwealth.

*Robert A. George* for the defendant.

FRIED, J. The defendant, Peter P. Roderick, was convicted of murder in the first degree, on a theory of felony-murder, and two indictments charging armed assault with intent to rob. He appeals from these convictions. We affirm the judgments of the Superior Court.

I

The defendant and an acquaintance, Archie Readus, knocked

on the door of a boarding house in Brockton, hoping to obtain drugs. When a woman who was acquainted with Readus let them into the common area of the boarding house, they told her they wished to purchase one "sixteenth" of cocaine. The woman acted as a runner for the victim, who sold cocaine out of his room on the third floor of the house. She told the men that the victim did not normally sell such large quantities of cocaine and that she would have to inquire whether he would be willing to make the transaction. She then went upstairs to consult with the victim. She testified that she did not take the defendant's money with her when she left the room and that she had not even seen the money at that point. The defendant testified, to the contrary, that the woman took the money from the two men with her when she left.

According to another resident of the house who spoke with the defendant and Readus while they were seated in the common area, both the defendant and Readus asked him if he had any drugs, and the defendant had one hand inside his jacket as he asked. The resident testified that he told the men that the only person in the house likely to have any drugs was the victim. The defendant testified that, after waiting on the first floor of the house for almost fifteen minutes, he and Readus wondered what had happened to their money and climbed the stairs to the hallway outside the victim's room. Hearing a noise in the stairway, the woman opened the door between the hall and the stairway to see the defendant and Readus waiting outside. According to her testimony, she protested to Readus that he should go away because the victim did not like other people coming up to his room. She testified that Readus pushed the door open and pushed her down the hallway, beyond the door to the victim's room. From where she stood, she saw the defendant pull a black handgun from his coat. She saw Readus remain in the hallway outside the victim's room and heard the victim's door being broken. She heard the sounds of a scuffle inside the room and heard someone shouting, "give me," and the victim saying, "me no have." When she heard a gunshot, she ran down the stairs.

Another man who was inside the victim's room at the time of the murder also testified for the prosecution. He testified that two men appeared in the doorway, but only one of them, a man with a black handgun, came into the room. That man put the gun to the witness's neck, shoved him against the wall and

threatened to shoot him if he moved, and demanded money from the witness and the victim. The witness then heard a gunshot, but did not see the shot fired because his face was pressed against the wall.

The defendant does not deny that he shot the victim, but his version of the events differs significantly from that of the prosecution witnesses. He testified that he had brought a gun with him to Brockton from his home in Connecticut, but that he had given it to Readus earlier in the day. He claims that when the two men went to the victim's room, Readus stood in the doorway, demanding drugs and that his money be returned. Readus pulled the gun and entered the room, but the defendant grabbed the gun away from Readus and tried to push him out of the room. The defendant testified that he shot the victim when he saw the victim coming at him "full speed" with a machete in his hand.

## II

Before trial, the defendant moved in limine to exclude evidence of his prior convictions, including a conviction for possession of a firearm. The judge ordered that this evidence should be excluded.

On cross-examination of the defendant, the prosecutor asked about the gun used to shoot the victim and then asked, "It's not the first time you've carried a firearm, is it?" The court sustained the defense's objection to this question, whereupon the prosecutor continued to inquire how the defendant had obtained the gun and why he had carried it with him on the day of the shooting. The defendant answered that "the gun was available and it was cheap. And I made a mistake, and I bought it." The prosecutor then asked again, "So you're saying this is the first time you've ever carried a gun?" Over the defense's objection, the judge allowed this question, and the defendant answered, "This is the first time I ever carried a gun? Yes." In response to further questions, the defendant testified that he did not know how to use the gun because he had never fired it and had bought it already loaded. With the judge's permission, the prosecution then introduced evidence of the gun possession conviction.

The defendant's primary argument on appeal is that the judge committed reversible error by permitting the Commonwealth to introduce evidence of the gun possession conviction despite the judge's exclusion of that evidence on the motion in limine. He

argues that the prejudicial effect of this evidence outweighed its probative value and asserts that he had made his tactical decision to testify based on the assurance that he would not be impeached with that prior conviction.

Evidence of prior convictions may not be admitted as evidence of a propensity to commit a crime, see *Commonwealth v. Trapp*, 396 Mass. 202, 206 (1985), *S.C.*, 423 Mass. 356, cert. denied, 519 U.S. 1045 (1996), but may be admitted to impeach the defendant's credibility as a witness, so long as its prejudicial effect does not outweigh its probative value. See *Commonwealth v. Carter, ante* 266 (1999). More specifically, it may be admitted to rebut specific portions of the defendant's testimony. See *Commonwealth v. Bembury*, 406 Mass. 552, 561-562 (1990). Whether such evidence, otherwise admissible, would be unduly prejudicial is a determination left to the trial judge's discretion. See *Commonwealth v. Maguire*, 392 Mass. 466, 467-470 (1984).

In this case, the trial judge was well within his discretion in excluding evidence of the prior convictions on the motion in limine, but he also would have been within his discretion to admit it. Thus, introduction of the convictions for impeachment purposes clearly would not have been erroneous in the absence of the judge's initial decision to exclude them, on which the defendant says he relied in choosing to testify at his trial. The question therefore remains whether either the prosecutor's actions in inquiring about the defendant's experience with guns or the judge's decision to permit the introduction of the gun possession conviction was reversible error in light of the order on the motion in limine.

Where the trial judge has ordered that certain evidence should not be admitted, the prosecutor should not ask a question that will inevitably lead to the introduction of that evidence. But that did not happen here. Asking whether the defendant had ever before carried or used a firearm would not necessarily lead to an inquiry into the defendant's prior convictions. The defendant could have answered truthfully that he had carried a firearm in the past, and, in light of the judge's order, the prosecutor would have had to leave it at that. Possessing and carrying a gun may be done lawfully, and testimony that the defendant had possessed a gun would not automatically lead the jury to believe that he had been convicted of doing so illegally. Therefore, the prosecutor's question was not in violation of the

judge's initial order.[1] But when the defendant answered untruthfully that he had never carried a gun, he opened the door to admission of the evidence of his prior conviction for gun possession. A defendant has no right to commit perjury, regardless of the prosecutor's question. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 638 (1997). The prosecution may introduce evidence to rebut specific items of testimony. See, e.g., *Commonwealth* v. *Bembury*, *supra*. Rebuttal evidence of this nature is introduced to impeach the credibility of the witness, but is of a different sort from evidence of prior convictions introduced to impeach the credibility of the defendant generally. The defendant moved in limine to exclude evidence of his prior convictions as unfairly prejudicial, and the judge granted this request. That decision, however, should not prevent the prosecution from introducing that evidence to rebut subsequent false testimony by the defendant. The judge's ruling in limine was not a license to lie in answer to proper questions, and when the defendant did lie, the door was open to the prosecution to show as much.

Rebuttal evidence has been permitted in circumstances very similar to those in this case. In *Commonwealth* v. *Bembury*, *supra*, the prosecution introduced evidence that the defendant had been convicted in 1969 of unlawfully carrying a firearm. This court held that introduction of that evidence was proper because it "directly contradicted [the defendant's] testimony and suggested its falsity." *Id.* at 562. Moreover, the gun possession charge was not so similar to the indictment charging murder in the first degree that there was any significant likelihood that the jury would confuse evidence of the conviction for evidence of the defendant's propensity to commit the crime. See *id.* at 561. As in *Bembury*, the introduction of evidence of the defendant's convictions was not improper.

## III

The defendant also argues that the judge erred in denying his motion for required findings of not guilty, asserting that no reasonable trier of fact could have found beyond a reasonable doubt that the defendant was guilty of felony-murder. He contends that there was no reliable identification of the

---

[1]This conclusion is bolstered by the defendant's prior testimony suggesting that he was a novice when it came to guns. This testimony justifiably led the prosecution to elicit evidence that the defendant in fact knew about guns and how to use them.

defendant as the shooter and that there was no evidence that the defendant had the intent to commit armed burglary, which was a necessary predicate to a felony-murder conviction.

There was no error in the denial of the defendant's motion. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318 (1979). Because the motion for required findings of not guilty was made at the close of the prosecution's case, in considering whether the judge properly denied the motion, this court may consider only the evidence presented by the Commonwealth. See *Commonwealth* v. *Borans*, 379 Mass. 117, 134 (1979), and cases cited. On the evidence presented by the prosecution, the jury reasonably could have found both that the defendant was the shooter and that the defendant possessed the requisite intent.

The victim's female associate testified that she saw the defendant pull a gun out of his coat and go into the room and that she saw Readus remain out in the hall. Another witness testified that only one man entered the room and that it was that man who held the gun. This testimony would have justified the jury in finding, at the end of the Commonwealth's case, that the defendant was the shooter.

As to the intent to commit armed robbery, a police forensic expert testified that the door to the victim's room had been broken in and that there was a visible footprint on the door. Several witnesses heard repeated, shouted demands for money after the defendant entered that room. A witness who had spoken with the defendant moments earlier heard the defendant's voice demanding money. The witness who had been in the room with the victim testified that he was shoved against the wall with a gun to his neck as the demands were made. The jury could reasonably have concluded that the evidence showed beyond a reasonable doubt that the defendant intended to commit armed robbery.

## IV

The defendant argues that there were several errors in the judge's jury instructions, which, individually or in combination, require reversal of his convictions. None of the instructions to which he objects constituted reversible error.

First, the defendant objects to an instruction concerning felony-murder, in which the judge stated that the jury could find the defendant guilty of murder in the first degree if they found "that the Commonwealth has proven beyond a reasonable doubt that the defendant unlawfully killed the victim in the commission or attempted commission of a crime punishable by imprisonment for life." The defendant argues that this might have led the jury to believe that, even if they found that the killing constituted manslaughter, they would have to convict the defendant of murder in the first degree if the killing occurred during the commission of a felony punishable by life imprisonment.

This argument is without merit. The difference between murder and manslaughter is that manslaughter requires no finding of malice. See *Commonwealth* v. *Wade*, 428 Mass. 147, 154 (1998). In the felony-murder context, the intent to commit the underlying felony is substituted for the malice aforethought required for murder. See *id.*; *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982). This is known as "constructive malice." *Id.* Thus, where the felony-murder rule applies, "[t]o make out a case of murder, the prosecutor need only establish that the defendant committed a homicide while engaged in the commission of a felony." *Id.* Manslaughter is a homicide. If the jury had found that the killing would have constituted manslaughter if it had not been committed during the commission of the underlying felony, then, finding the defendant guilty of that felony, they were required to find the defendant guilty of felony-murder in the first degree. Indeed, in a similar case, this court decided that the judge need not give a manslaughter instruction at all, where the felony-murder rule applies. See *Commonwealth* v. *Donovan*, 422 Mass. 349, 353-354 (1996).

Second, the defendant objected to an instruction that malice "may be inferred — it does not have to be — from the intentional use of a dangerous weapon." This was a correct statement of the law. See *Commonwealth* v. *Albert*, 391 Mass. 853, 860 (1984).

The defendant's third objection to the jury charge is that it should have included an impairment instruction because of evidence in the record that the defendant had used cocaine on the night of the murder and a statement by one witness that the defendant was acting "paranoid" earlier in the evening. At trial, the defendant neither requested an impairment instruction nor

objected to the absence of such an instruction. The standard of review, therefore, is whether the failure to give such an instruction created a substantial likelihood of a miscarriage of justice. It did not. Although the defendant testified that he had smoked cocaine on the evening of the murder, he did not testify that he was mentally impaired by his drug use at the time of the shooting, and there was no other evidence suggesting such impairment. The one statement quoted above does not rise to the level of evidence requiring such a charge.

Fourth, the defendant argues that the judge erred in instructing the jury on the prosecution's burden of proof with respect to provocation. The correct rule is that, where the evidence has "raise[d] the possibility that the defendant may have acted on reasonable provocation, the Commonwealth must prove, and the jury must find, beyond a reasonable doubt that the defendant did not act on reasonable provocation." *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998), citing *Commonwealth* v. *Boucher*, 403 Mass. 659, 661 (1989). The defendant argues that the language used by the judge gave the jury the impression that they were required to find that the unlawful killing constituted murder unless the presence of provocation was proved beyond a reasonable doubt. The jury instruction in this case combined the correct rule with the incorrect statement of the law that this court found to be prejudicial in *Acevedo, supra*. Therefore, if a provocation instruction had been required in this case, the confusion that the instruction likely created in the minds of the jurors would have required reversal of the convictions.

In this case, however, the defendant was not entitled to any provocation instruction at all. The provocation instruction given, though erroneous, granted the defendant more protection than the law afforded him, and, therefore, could not have prejudiced him.[2] The jury found the defendant guilty of felony-murder and of armed assault with intent to rob. It is clear, therefore, that they did not accept the defendant's version of events but decided that it had been proved beyond a reasonable doubt that, even if the victim did come at the defendant with a machete, he did so

---

[2]The defense requested and received an instruction on self-defense, which was entirely proper and to which the defendant raises no challenge on appeal. Indeed, the instruction on self-defense was more favorable than the defendant deserved because it did not mention the right of the victim to use deadly force without retreating when attacked in his home. See G. L. c. 278, § 8A.

in response to an armed robber forcing his way into his dwelling. Such a response to an attempted violent armed robbery cannot be considered legally adequate to provoke the robber into killing his intended victim.

Moreover, even if adequate provocation had existed, the erroneous provocation instruction would not, as a matter of law, require reversal of the defendant's conviction of felony-murder. The provocation defense negates malice, reducing an unlawful killing from murder to manslaughter. See *Acevedo, supra* at 715-716 ("[m]alice and adequate provocation are mutually exclusive"). Thus, if the jury had found adequate provocation to be present, the effect would have been only that they could not find that the Commonwealth had proved beyond a reasonable doubt the malice element of murder. In a felony-murder case, however, the Commonwealth need not prove the existence of malice. As discussed above, in such a case, the commission of the underlying felony serves as constructive malice. See *Matchett, supra* at 502. Therefore, even if the claimed provocation had been legally adequate, it would not have prevented the jury from finding the defendant guilty of felony-murder.

## V

The defendant argues that this court should exercise its authority under G. L. c. 278, § 33E, to reverse his murder conviction because it was against the weight of the evidence and, as such, was a miscarriage of justice. We have reviewed the whole record. There has been no miscarriage of justice.

*Judgments affirmed.*