COMMONWEALTH *vs.* PAUL J. OLIVEIRA.

No. 07-P-1629.

Middlesex. December 5, 2008. - April 14, 2009.

Present: LENK, MEADE, & FECTEAU, JJ.

*Assault and Battery. Evidence,* Prior conviction. *Practice, Criminal,* Instructions to jury, Opening statement. *Constitutional Law,* Self-incrimination. *Witness,* Self-incrimination.

At the trial of a criminal complaint charging assault and battery, the judge did not abuse her discretion or commit a palpable error of law in permitting the prosecutor to cross-examine the defendant regarding his prior convictions involving the same victim (including two convictions of the same crime of assault and battery), where the Commonwealth was entitled to offer the prior convictions to rebut a specific portion of the defendant's testimony, in which he portrayed himself as a peaceful, nonviolent man who wished to avoid conflict, and where the prior convictions were relevant to show the hostile nature of the defendant's relationship with the victim and his motive to commit the crime [52-54]; further, the judge was not required, in the absence of a request by the defendant, to provide the jury, sua sponte, with a limiting instruction regarding the evidence [55].

Comments made by the prosecutor in his opening statement at a criminal trial were a fair reference to anticipated evidence that bore on the manner and circumstances in which the defendant committed assault and battery on the victim. [55-56]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the admission in evidence of a witness's testimony that he had opted to testify despite the possible criminal consequences he faced, where the testimony provided proper rehabilitative evidence which assisted the jury's evaluation of the credibility of the witness, whose bias was inherent in his position as an alleged participant in the events giving rise to the crime and in light of his relationship with the victim. [56-58] LENK, J., concurring.

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on August 17, 2006.

The case was tried before *Michele B. Hogan,* J.

*Ronald M. Stone* for the defendant.

*Fawn D. Balliro,* Assistant District Attorney, for the Commonwealth.

MEADE, J. The defendant was convicted in the Cambridge Division of the District Court Department of assault and battery, in violation of G. L. c. 265, § 13A. On appeal, he claims that the trial judge erred by permitting the prosecutor to cross-examine him relative to his prior convictions. He also claims that comments by the prosecutor in his opening statement and the admission of a witness's testimony that he had waived his privilege against self-incrimination were errors that created a substantial risk of a miscarriage of justice. We affirm.

1. *Background.* Prior to trial, the prosecutor informed the judge that the defendant had prior convictions, but that he did not have certified copies for them. The judge acknowledged the lack of certified copies and stated that the Commonwealth could not introduce "prior bad acts" in its case-in-chief, but if the "issue" arose because of "other circumstances," it could be addressed at that time.

Based on the evidence presented at trial, the jury were entitled to find the following.[1] The defendant and the victim had a bad marital relationship which did not improve upon their divorce. The two informally shared custody of their then-eleven year old son, Joseph. On the morning of the incident, the victim telephoned the defendant to arrange a time to pick up Joseph, who had been visiting the defendant. During this conversation, the defendant antagonized the victim by asking if she had "fun fucking Jack all night?" Jack, the victim explained at trial, was her friend John Duran, who was not her boyfriend.[2] The victim chose not to engage the defendant on the subject due to their "long history" together, and instead arranged a noontime pickup.

When the victim and Duran arrived at the defendant's apartment at noon, the defendant and Joseph were waiting outside with Joseph's bicycle, which Duran took to place in the trunk of the car. Joseph got in the back seat of the car, and the victim in the car's passenger seat. Once inside, she said hello to the boy, who in turn said, "What's up, jackass[?]" When the victim stared at him in shocked disbelief, he supplemented his

---

[1]Additional facts will be discussed as they relate to the defendant's specific claims of error.

[2]Duran testified otherwise.

disrespectful greeting with the query, "Did you have fun fucking Jack all night[?]" Realizing these comments originated with the defendant, the victim, who was extremely upset, got out of the car and confronted the defendant in his apartment's entryway. After recounting for the defendant what Joseph had said to her, she asked him what he was teaching their son. Without responding, the defendant grabbed her by the throat with one hand to choke and "push" her. Duran intervened by punching the defendant in the face, pushing him to the wall, and grabbing him by the neck. The victim then telephoned the police.

In his defense, the defendant testified that when the victim came to pick up their son, she became angry and was "yelling and screaming" at him as he stood in the entryway to his apartment. According to the defendant, the victim told Duran to punch the defendant in the face and to "kick his ass." The defendant testified that Duran grabbed him by the throat and punched him in the face. The defendant denied even touching the victim. He also denied asking the victim on the telephone whether she had fun having sex with Duran all night.

When asked why he did not fight back, the defendant responded that he "didn't want to get involved with anything, [he] was just trying to get in the house." The defendant testified that he did not summon the police because he did not "want conflict with anybody, [he] just wanted to go in the house and be at peace" because he was retired and disabled as a result of an automobile accident. He testified that he could not believe what was happening.

Prior to his cross-examination of the defendant, and based on the defendant's depiction of himself in his direct testimony as a peaceful man who wished to avoid conflict, the prosecutor sought permission to impeach him with his prior convictions. Over the defendant's objection, and based on the judge's view that the defendant's testimony was intended to unfairly depict himself in a positive light for the jury, the judge permitted the prosecutor to inquire about the defendant's prior convictions.

Without providing any details of the offenses, the prosecutor asked the defendant if he previously had been convicted of intimidating a witness, two counts of assault and battery, simple

assault, and making threats, all upon his ex-wife, the victim.[3] The defendant acknowledged that his ex-wife was the same victim in those cases, but claimed that he "never assaulted her" and that all he had done was tell her not to "be afraid" because the police officers were present, which led to his conviction of "domestic violence." The present case was, for the defendant, another story the victim had concocted.

2. *Prior convictions.* The defendant claims that it was error for the judge to allow the prosecutor to cross-examine him regarding his prior convictions, which involved the same victim. We disagree. "Evidence of prior convictions may not be admitted as evidence of a propensity to commit a crime, but may be admitted to impeach the defendant's credibility as a witness, so long as its prejudicial effect does not outweigh its probative value." *Commonwealth* v. *Roderick*, 429 Mass. 271, 274 (1999) (citation omitted). See *Commonwealth* v. *Bianchi*, 435 Mass. 316, 322 (2001); Mass.G.Evid. § 609 (2008-2009). More specifically, such evidence "may be admitted to rebut specific portions of the defendant's testimony." *Roderick, supra.* Our review of a trial judge's decision in these circumstances is not de novo. Rather, the decision to admit impeachment evidence rests in the broad discretion of the judge and will not be disturbed on appeal unless the exercise of that discretion constituted an abuse of discretion or palpable error of law. *Ibid.,* citing *Commonwealth* v. *Maguire*, 392 Mass. 466, 467-470 (1984). See *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981).

At the outset of the trial, the judge considered the issue of the defendant's prior convictions involving the same victim, two of which were for the same crime of assault and battery. Although there is no per se rule of exclusion when the prior conviction is for the same or a similar crime, see *Commonwealth* v. *Crouse*, 447 Mass. 558, 565-566 & n.6 (2006), the judge here evidently weighed the possible unfairness to the defendant against the probative value of the evidence. In fact, it appears from the

---

[3]No mention was made of the defendant's 1990 convictions of assault and battery and malicious destruction of property, or that he had a pending motor vehicle offense when he committed the within offense. In addition to the victim, three other women have received abuse prevention orders against the defendant.

pretrial discussion that the judge decided that the prior convictions were too prejudicial to be admitted under G. L. c. 233, § 21, which authorizes impeachment by prior conviction. In the same pretrial ruling, the judge allowed the topic to be revisited if the defendant changed the terrain of the case by opening the door for their admission. The judge's ruling anticipated the circumstances that soon unfolded.

The defendant testified that despite the beating he took from Duran at the insistence of the victim, he neither summoned the police nor fought back because he merely wished to retreat to his house where he could avoid any conflict. He wanted to be at peace because he was retired and disabled, and he was astonished at what had occurred. He further denied having taunted the victim about her assumed liaison with Duran. Given this testimony, was the judge justified in concluding that the defendant had unfairly depicted himself to the jury as a peaceful, noncombative person who had been victimized by Duran and his ex-wife?

Although the question whether the defendant's testimony opened the door to this line of cross-examination is a close one, and we may have answered it differently if it were before us in the first instance, we cannot do so here. Rather, we conclude that the judge's ruling did not constitute an abuse of discretion or palpable error of law. The Commonwealth was entitled to offer the prior convictions to rebut this specific portion of the defendant's testimony, i.e., that he was a peaceful, nonviolent man who wished to avoid conflict. See *Roderick, supra* at 275 ("when the defendant answered untruthfully that he had never carried a gun, he opened the door to admission of the evidence of his prior conviction for gun possession"). "Rebuttal evidence of this nature is introduced to impeach the credibility of the witness, but is of a different sort from evidence of prior convictions introduced to impeach the credibility of the defendant generally." *Ibid.* The judge's initial decision to exclude the evidence of the prior convictions did not provide the defendant, given his criminal history of violence, license to unfairly depict himself as a peaceful man who eschewed conflict. See *Commonwealth* v. *Rivera*, 425 Mass. 633, 638 (1997). Once he depicted himself as such, the prosecutor's hands no longer were tied, and he was free

to rebut the defendant's testimony with the evidence of the prior convictions. See *Commonwealth* v. *Bembury,* 406 Mass. 552, 561-562 (1990). See also *Commonwealth* v. *Magraw,* 426 Mass. 589, 595-596 (1998) (at husband's trial for murder of his wife, otherwise inadmissible evidence that wife feared husband was properly admitted to rebut husband's claim that couple was "happy").

Our finding that the judge did not abuse her discretion is further buttressed by the fact the defendant's prior convictions of crimes involving his ex-wife were relevant to show the hostile nature of the defendant's relationship with her and his motive to commit the crime, even had he not opened the door in his direct testimony. See *Commonwealth* v. *Bianchi,* 435 Mass. at 322; *Commonwealth* v. *Julien,* 59 Mass. App. Ct. 679, 686 (2003); Mass.G.Evid. § 404(b). The judge acted well within her discretion in determining that the probative value of the prior convictions evidence outweighed any unfair prejudice to the defendant, see Mass.G.Evid. § 403, particularly in light of the defendant's denial of having made any antagonizing comments to the victim on the telephone and his stated belief that the crime was a product of the victim's imagination. See *Commonwealth* v. *Holmes,* 157 Mass. 233, 240 (1892) (defendant's oral threats and repeated acts of violence may indicate "settled ill-will and malice on the part of the defendant towards his wife, and therefore [bear] directly on the question whether there was any motive for him to commit the crime"); *Commonwealth* v. *Gil,* 393 Mass. 204, 215-217 (1984) (evidence of restraining orders issued against husband properly admitted to show hostile relationship with wife and motive to kill her); *Commonwealth* v. *Cormier,* 427 Mass. 446, 449-450 (1998) (evidence of defendant's previous attack of, and threats made to, wife was properly admitted to show hostile nature of their relationship and his motive and intent in killing her, especially where defendant claimed self-defense); *Commonwealth* v. *Bianchi, supra* (evidence of defendant's prior assault on his wife was properly admitted to show hostile nature of their relationship and his motive to kill her); *Commonwealth* v. *Julien, supra* (evidence of defendant's prior abusive behavior towards his girlfriend admissible to show hostile nature of their relationship and his motive to kill her).

Finally, the defendant faults the judge for not providing the jury with a limiting instruction regarding the evidence. However, he neither requested any such instruction nor objected to the absence of one. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict"). As such, we review this claim only to determine whether the judge's failure sua sponte to give the instruction was an error that created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Peppicelli*, 70 Mass. App. Ct. 87, 95 (2007). We discern no error and, therefore, no such risk.

"[T]here is no requirement that [a] judge give limiting instructions sua sponte." *Commonwealth* v. *Sullivan*, 436 Mass. 799, 809 (2002). See *Commonwealth* v. *Leonardi*, 413 Mass. 757, 764 (1992). Nor does the lack of a limiting instruction necessarily create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Roberts*, 433 Mass. 45, 48 (2000); *Commonwealth* v. *Washington*, 449 Mass. 476, 488 (2007). Here, the evidence supporting the defendant's conviction was strong, the defendant offered a mitigating account for his prior convictions, the prosecutor properly argued the matter as one of credibility, not propensity, and the jury asked no questions related to the prior convictions evidence. Because the judge was not required to give the instruction in the absence of a request, and the defendant may have wished to avoid drawing any further attention to the matter by requesting one, there was no error and, therefore, no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 297-298 (2002).

3. *Prosecutor's opening statement.* The defendant claims that the prosecutor improperly stated his personal belief regarding domestic violence and the defendant's guilt. The prosecutor began his opening statement with the now challenged remarks, which are as follows:

> "You don't put your hands on a woman. You don't put your hands on her throat. You don't make disparaging comments, and put your hands on a woman in front of a twelve year old boy or near a twelve year old boy [who's]

both your son and her son. It doesn't matter what the woman, in this case, [the victim], was saying to you, you don't put your hands on a woman's throat."

Because there was no objection to the prosecutor's opening statement, we review the defendant's claim only to ascertain whether any error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Croken*, 432 Mass. 266, 267-268 (2000). There was no error and, thus, no risk that justice miscarried.

Although the challenged remarks have an unnecessarily argumentative flavor for an opening statement, they were nonetheless a fair reference to anticipated evidence that bore on the manner and the circumstances in which the defendant committed the assault and battery on the victim. See *Commonwealth* v. *Fazio*, 375 Mass. 451, 454 (1978). In fact, the challenged remarks were immediately followed by a more appropriate outline of the evidence the prosecutor expected to present, and thus his remarks could not be fairly understood to be his opinion. See *Commonwealth* v. *Croken*, *supra* at 268, quoting from *Commonwealth* v. *Fazio*, *supra* ("The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence"). Rather, the challenged remarks were specifically directed at anticipated evidence that the defendant's unconsented-to touching of the victim was without justification or excuse, necessary components of assault and battery. See *Commonwealth* v. *Mitchell*, 67 Mass. App. Ct. 556, 564 (2006). Finally, the lack of an objection by defense counsel is further indication that the remark was not unfairly prejudicial in tone, manner, or substance.[4] See *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985).

4. *Testimony regarding waiver of Fifth Amendment privilege.* The defendant claims that Duran should not have been permitted to inform the jury that he had chosen to testify despite his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. Because Duran's testimony was presented without objection, we review the defendant's claim only to determine whether any error created a substantial risk of

---

[4]The jury also were instructed at the beginning of the trial and in the final charge that opening statements were not evidence.

a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

Prior to the start of the trial, the judge was made aware that Duran's testimony, most likely consisting of a statement that he punched the defendant, would be self-incriminatory. Following the proper procedure, see *Commonwealth* v. *Fisher*, 433 Mass. 340, 350 & n.12 (2001), the judge assigned Duran counsel, who discussed the matter with Duran, and the judge conducted a voir dire, which concluded with Duran's knowing and voluntary waiver of his right not to incriminate himself.

Near the conclusion of Duran's direct testimony, the prosecutor elicited from him that Duran had met with an attorney prior to testifying, that he was advised of his rights, and that if he testified he could be charged with a crime. Duran stated that he opted to testify because he wanted to "tell the truth, . . . [he was] not going to stand back and watch a man put his hands on a woman like that, even if [he] didn't know the person, [he was] not going to do that. . . . [He had] no respect for a person that does something like that." Neither the prosecutor's question nor Duran's responses made an express reference to his waiver of his Fifth Amendment privilege against self-incrimination.

"When it is clear that a witness intends to exercise the privilege against self-incrimination, the witness should not be permitted to do so before the jury." *Id.* at 350, citing *Commonwealth* v. *Hesketh*, 386 Mass. 153, 158 (1982). "A witness's invocation of the Fifth Amendment in front of the jury is prejudicial in part because of its implication of criminality which, particularly if coming from an accomplice of the defendant, will strongly suggest that the defendant is also a criminal." *Commonwealth* v. *Fisher*, *supra* at 349 n.11. The defendant's claim insists a corollary rule that would prohibit a jury from knowing that a witness was testifying despite the potential criminal ramifications of his testimony. However, the defendant's brief fails to cite any authority in support of the claimed rule. As such, we deem his argument to be waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Even if the claim were not waived, the defendant's argument would run counter to the principles that support the prohibition on invoking the privilege in front of the jury. Allowing a witness at trial to explain before a jury that he is refusing to testify

based on the Fifth Amendment does not provide any probative evidence of the defendant's guilt or innocence. Instead, it presents the real possibility that jurors will speculate that the witness is guilty of the crime charged (or another crime) and that the defendant is not. See *Commonwealth* v. *Gagnon*, 408 Mass. 185, 197 (1990). See also *Commonwealth* v. *Kane*, 388 Mass. 128, 138-139 (1983) (priest's refusal to answer questions about what defendant told him might have led jury to infer that defendant had inculpated himself, but no abuse of discretion found).

The circumstances presented here are very different from those involving a refusal to testify. Ordinarily, "evidence whose purpose is not to prove material facts but merely to bolster credibility generally may not be admitted unless and until there has been an attack on credibility." Brodin & Avery, Massachusetts Evidence § 6.24 (8th ed. 2007). However, this rule, as cited in the concurring opinion, is the general rule. An exception to the rule is that where the witness's " 'bias was inherent in his position as an alleged participant in the crime,' rehabilitative evidence may be introduced even though no attack on credibility has occurred." *Ibid.*, quoting from *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 571 (1983). Even though Duran was not a participant in the crime against the victim, by intervening on the victim's behalf, he became a participant in the events giving rise to the defendant's crime. In these circumstances, Duran's inherent bias is just as apparent, especially in light of his relationship with the victim.

Due to his inherent bias, Duran's decision to testify, despite the possible criminal consequences he faced, provided proper rehabilitative evidence which assisted the jury's evaluation of his credibility. Moreover, the fact that a witness's testimony, which could have been avoided based on the privilege, put the witness at risk is an acceptable factor a prosecutor may put before the jury. *Commonwealth* v. *Dixon*, 425 Mass. 223, 233 (1997). As the prosecutor's inquiry was proper, there can be no risk that justice miscarried.

*Judgment affirmed.*

LENK, J. (concurring). I write separately only with respect to

the last portion of the majority opinion which addresses Duran's testimony on direct examination concerning his decision to testify notwithstanding his privilege against self-incrimination under the Fifth Amendment to the United States Constitution. No objection to this testimony was raised at trial, and I agree with the majority that the defendant's cursory and undeveloped contention does not constitute adequate appellate argument under Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Because we do not have the benefit of briefing on the point, I would not consider it further but agree that, if we nonetheless chose to do so, we could readily conclude that even if error, the testimony did not give rise to a substantial risk of a miscarriage of justice. Unlike the majority, however, I cannot endorse the prosecutor's challenged line of inquiry, consisting of the following:

PROSECUTOR: "And with respect to this incident, before you testified, did you meet with anyone prior to testifying?"

DURAN: "Excuse me?"

PROSECUTOR: "Did you meet with any attorney prior to your testimony?"

DURAN: "Yes, I did this morning."

PROSECUTOR: "And why was that?"

DURAN: "He told me I could be criminally charged, he advised me of my rights."

PROSECUTOR: "And what was your response?"

DURAN: "I'm going to get up here and tell the truth, I'm not going to be — I'm not going to stand back and watch a man put his hands on a woman like that, even if I didn't know the person, I'm not going to do that. I was brought up different than that, I have no respect for a person that does something like that."

PROSECUTOR: "Okay, thank you."

The majority deems this exchange proper, partially in reliance on *Commonwealth* v. *Dixon*, 425 Mass. 223, 232-233 (1997), a case that is not on all fours with the case before us. The court in *Dixon* discerned no error in the prosecutor's closing remarks that a key Commonwealth witness "didn't have to testify in this case. He could've taken his Fifth and walked and nothing could have ever happened to that kid. But he gets on the stand and he implicates himself in a drug deal, and he implicates himself to a certain degree in the murder of this person." *Id.* at 232. Testimony to this effect was adduced from the witness on direct examination without objection "in order to lay out why [the witness] was testifying differently at the trial than he had before the grand jury." *Ibid.* Discerning no reason why the prosecutor's closing, resting on this testimony, was any more prejudicial than the testimony itself, and recognizing the prosecutor's entitlement to argue from the evidence that its witnesses were credible, the court observed that the fact that the witness's "own testimony, which he could have avoided giving at all, put him at risk is a factor the prosecutor may put before the jury." *Id.* at 232-233. In doing so, the court, *ibid.*, relied in part on *Commonwealth* v. *Raymond*, 424 Mass. 382, 390-391 (1997), which similarly involved a witness who had made a prior inconsistent statement.[1]

Unlike *Dixon*, where the witness was open to impeachment by virtue of his prior inconsistent testimony, the prosecutor here had no need to bolster Duran's testimony. The majority's view that "Duran's decision to testify, despite the possible criminal consequences he faced, provided proper rehabilitative evidence which assisted the jury's evaluation of his credibility"[2] runs counter to the well established principle that "evidence whose

[1] In *Dixon*, the court's reliance on *Commonwealth* v. *Donovan*, 422 Mass. 349, 357-358 (1996), is as to the propriety of certain comments that the prosecutor made comparing a witness's having taken blame for his part in a crime (and thereby being credible) with the defendant's failure to do so. *Commonwealth* v. *Dixon, supra* at 233. The *Donovan* court, while not explicitly endorsing the comments, noted that, even if they "[cross] the line, the judge's instructions avoided substantial prejudice to the defendant." *Commonwealth* v. *Donovan, supra* at 358.

[2] The prosecutor's explicit mention of the Fifth Amendment in *Dixon*, unlike the more oblique reference here, is of no consequence to the analysis. It is inconceivable that any lay person who is exposed to television or to newspapers could fail to understand what "rights" Duran had been advised of by counsel,

purpose is not to prove material facts but merely to bolster credibility generally may not be admitted unless and until there has been an attack on credibility." Brodin & Avery, Massachusetts Evidence § 6.24 (8th ed. 2007). Here, evidence of Duran's waiver was not used to prove material facts, but merely pre-emptively to bolster his as yet unattacked credibility.

The majority seeks to fit Duran's testimony within the exception to this general rule, namely that where the "whiff of [the witness]'s bias was inherent in his position as an alleged participant in the crime," the prosecutor may introduce rehabilitative-type evidence even before the witness's credibility has been formally attacked. *Commonwealth* v. *Haraldstad*, 16 Mass. App. 565, 571 (1983). I cannot agree that the situation at hand comports with that in *Haraldstad*, as the analysis in that case specifically contemplates a situation in which the witness is an alleged participant in the same crime as the defendant. *Ibid.*

In *Haraldstad*, the witness in question had been accused of the same rape and assault by means of a dangerous weapon as the defendant. *Id.* at 570. There, one easily can imagine how the jury would get a "whiff" of the witness's inherent bias, i.e., his desire to save his own neck by testifying favorably for the defendant. *Id.* at 570-571. Here, Duran had not participated in the same crime as the defendant (assaulting the victim), but rather had committed a separate assault upon the defendant, ostensibly in defense of the victim. I cannot conclude that Duran's separate attack on the defendant qualifies as a "case based on the same facts" within the meaning of *Haraldstad*, *id.* at 571. If it did, the *Haraldstad* exception likely would swallow the rule, allowing any witness who waives his Fifth Amendment right, even a witness whose unrelated crime would not inherently raise the suspicions of the jury, to receive the same favorable treatment as the witness in *Haraldstad*, a man standing accused of the same heinous crime as the defendant in that case. Instead, Duran's bias was simply a commonplace sort: a boyfriend testifying favorably for his girlfriend, the victim. He could have been attacked for this

particularly because counsel had told him he "could be criminally charged." Furthermore, the court in *Dixon* does not seem particularly concerned with the prosecutor's exact wording, and does not consider whether the Fifth Amendment was explicitly mentioned, versus merely alluding to it.

inherent bias, but until that attack occurred, he should not have been encouraged to comment on his character or truthfulness.

Where Duran had neither given prior inconsistent testimony nor had his character or truthfulness attacked, and where he had not been accused of the same crime as the defendant such that the jury's suspicions about his inherent bias might be aroused, he should not have been permitted to testify that he was raised to be, in essence, a stand-up kind of fellow who valued getting the truth out more than he feared facing criminal charges. In effect, Duran was allowed, improperly in my view, to vouch for his own good character and truthfulness. See *Commonwealth* v. *Sheline*, 391 Mass. 279, 288 (1984); *Commonwealth* v. *Haraldstad, supra*; *Commonwealth* v. *Clark*, 23 Mass. App. Ct. 375, 380 (1987). I see no reason to extend *Dixon* or *Haraldstad* to cover the circumstances here and accordingly respectfully disagree with the majority's conclusion that the prosecutor's inquiry was proper.