## COMMONWEALTH vs. NORAIN TRUONG.

No. 09-P-804.

Essex. May 18, 2010. - October 7, 2010.

Present: MILLS, WOLOHOJIAN, & HANLON, JJ.

*Evidence,* Impeachment of credibility. *Witness,* Impeachment. *Statute,* Construction. *Firearms. Due Process of Law,* Vagueness of statute.

At the trial of a complaint charging possession of ammunition without a firearm identification card, in violation of G. L. c. 269, § 10(*h*), the judge did not abuse her discretion in allowing the Commonwealth to question the defendant about his previous probation as a juvenile for possession of ammunition, where the Commonwealth's purpose was to rebut the defendant's contention that he did not know what a shell casing was. [30-31]

This court concluded that G. L. c. 269, § 10(*h*), criminalizes the possession of spent shell casings, which constitute "cartridge cases" within the meaning of the statute [31-32]; further, this court discerned no ambiguity in that term that would render the statute void for vagueness [32-33].

This court concluded that G. L. c. 269, § 10(*h*), which prohibits the possession of ammunition without a firearm identification card, plainly bears a reasonable relation to a permissible legislative objective, i.e., the protection of the public from the danger posed by the assemblage and usage of ammunition, and thus does not violate the due process clause of the Fourteenth Amendment to the United States Constitution; for the same reason, the statute does not violate the Massachusetts Constitution. [33]

COMPLAINT received and sworn to in the Lynn Division of the District Court Department on May 30, 2007.

The case was tried before *Ellen Flatley,* J.

*Robert E. Curtis, Jr.,* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

MILLS, J. A jury convicted the defendant of possession of ammunition without a firearm identification card, G. L. c. 269, § 10(*h*) (statute). He appeals, claiming that (1) the Commonwealth should have been precluded from inquiring into his juvenile probation record; and (2) the statute under which he

was convicted did not proscribe the conduct of which he was accused or, alternatively, the statute is unconstitutional. We affirm.

*Background.* The evidence at trial developed as follows. After observing bullet holes in several cars and shell casings on the street, police sought to secure 42 Hanover Street in Lynn while waiting for a search warrant. They were met by Rocky Chan, the defendant's girlfriend and mother of his two children. Police asked for "Tre" and Chan escorted them to a third-floor bedroom, where they saw the defendant. He identified himself as Tre and stated that he lived at that location.

The police began searching the house pursuant to a search warrant. A piece of paper with the inscription "Tre" was taped to the door of a bedroom, and "Tre" was written on the mirror inside that room. Police recovered "three spent shell casings" near the bed and a soda can containing seven spent shell casings outside the bedroom door. In a bureau inside the bedroom, police recovered a gun holster, a spent shell casing, and the defendant's learner's permit. In the basement, police discovered "an assortment of ammunition" that was "stuffed" in the rafters above a ceiling.

At trial, the defendant claimed he did not know where the items came from. He testified that he frequently visited 42 Hanover Street but did not live there. Chan testified that her younger sister discovered the shell casings on the playground, and that she had taken them from her sister and placed them in the soda can. She also testified that she took the gun holster away from her sister.

While testifying, the defendant suggested that at the time of the search, he did not know what a shell casing was.[1] In response

---

[1]Direct examination of the defendant included the following exchange:

*Q.*: "I place in front of you Exhibit 3; do you know what it is?"

*A.*: "No."

*Q.*: "Do you know what it is before this incident?"

*A.*: "No."

*Q.*: "Do you know what it is after the incident?"

*A.*: "Yes."

*Q.*: "After the incident, what do you know it to be?"

to this testimony, the Commonwealth was permitted to question the defendant about whether he had previously been on probation as a juvenile for possession of ammunition.[2]

*Discussion.* 1. *Juvenile probation record.* The defendant argues that the Commonwealth should not have been permitted to impeach his credibility with his juvenile probation record because there was no certified record of the conviction as required by G. L. c. 233, § 21. However, "[t]his is not a case where the Commonwealth was trying to impeach . . . the defendant by proof of [his] commission or conviction of a crime . . . [and thus] G. L. c. 233, § 21, does not apply." *Commonwealth* v. *Redmond,* 357 Mass. 333, 337 (1970). See *Commonwealth* v. *Roderick,* 429 Mass. 271, 275 (1999) ("[r]ebuttal evidence of

---

*A.:* "A shell casing."

*Q.:* "And who told you that?"

*A.:* "Police."

[2]Cross-examination of the defendant included the following exchange:

*Q.:* "So you don't know what ammunition is until after the police told you what it was?"

*A.:* "Yeah."

. . .

*Q.:* "Then why were you on probation in juvenile court for possession of ammunition?"

*A.:* "They told me."

*Q.:* "Excuse me?"

*A.:* "They told me I was on probation because of that."

*Q.:* "For possession of ammunition?"

*A.:* "Yeah."

*Q.:* "The same ammunition that you don't recognize there?"

*A.:* "[No.]"

*Q.:* "So it's your testimony that you didn't have any ammunition then either?"

*A.:* "[Inaudible]."

*Q.:* "But you were put on probation for it?"

*A.:* "Yeah."

this nature is introduced to impeach the credibility of the witness, but is of a different sort from evidence of prior convictions introduced to impeach the credibility of the defendant generally"). Instead, the Commonwealth used the defendant's juvenile probation record to rebut his contention that he did not know what a shell casing was. This method of impeachment by contradiction was proper. See *ibid.* Further, in these circumstances, when "the defendant's credibility was very much in question, and the [probation record] was relevant to credibility[,]" the judge did not abuse her discretion in admitting that evidence. *Commonwealth* v. *Whitman,* 416 Mass. 90, 95 (1993) ("the record admitted here appears to have been the only available one and its exclusion would have deprived the Commonwealth of important impeachment evidence").

2. *The statute.* a. *Proscribed conduct.* The defendant argues, as he did at trial, that the "spent shell casings" which the police recovered are not prohibited by the statute under which he was convicted. That statute provides, in relevant part, that "[w]hoever owns, possesses or transfers a firearm, rifle, shotgun or ammunition without complying with the provisions of section 129C of chapter 140 shall be punished . . . ." G. L. c. 269, § 10(*h*), inserted by St. 2006, c. 48, § 6. The term "ammunition" is defined as "cartridges or cartridge cases, primers (igniter), bullets or propellant powder designed for use in any firearm, rifle or shotgun." G. L. c. 269, § 10(*o*), inserted by St. 2006, c. 48, § 7.

"A 'statute is to be interpreted according to the plain and ordinary meaning of its words.' " *Commonwealth* v. *Murphy,* 68 Mass. App. Ct. 152, 154 (2007), quoting from *Commonwealth* v. *Conaghan,* 433 Mass. 105, 110 (2000). We "will not engage . . . in an analysis of a statute's legislative history to seek justification for a particular construction, where the statutory language at issue suggests no ambiguity of meaning." *Thurdin* v. *SEI Boston, LLC,* 452 Mass. 436, 449 (2008), quoting from *Massachusetts Community College Council MTA/NEA* v. *Labor Relations Commn.,* 402 Mass. 352, 354 (1988).[3] Instead, "[w]e derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and

---

[3] A different analysis applies when we seek to construe ambiguous statutes. See *Carpenter's Case,* 456 Mass. 436, 446 (2010).

dictionary definitions." *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977).

Here, the term "cartridge cases" is not defined by either G. L. c. 269, § 10(*h*) or § 10(*o*). The dictionary definitions of "cartridge" and "shell" indicate that the terms "cartridge case" and "shell casing" are both used to describe the item that contains the primer and charge for firearms ammunition. See American Heritage Dictionary of the English language 287, 1603 (4th ed. 2006) (defining "cartridge" as "[a] cylindrical, usually metal casing containing the primer and charge of ammunition for firearms" and "shell" as "[a] metal or cardboard case containing the charge and primer for a piece of firearms ammunition"); IX Oxford English Dictionary 674 (1933) (defining shell as "[a] cartridge case of paper or metal").

In this case, we discern no ambiguity in the statutory language at issue. Our cases have used the terms "cartridge cases" and "shell casings" synonymously and interchangeably.[4] See, e.g., *Commonwealth* v. *Beliard,* 443 Mass. 79, 83, 87 n.7 (2004); *Commonwealth* v. *Caillot,* 449 Mass. 712, 717, 723 (2007); *Commonwealth* v. *Taylor,* 455 Mass. 372, 376 (2009). The absence of any identified ambiguity in these terms cuts against the defendant's position.[5] A plain reading of the statute further undermines the defendant's claim. The statute criminalizes possession of cartridges and their component parts, including "cartridge cases, primers (igniter), bullets or propellant powder." G. L. c. 269, § 10(*o*). We conclude that, contrary to the defendant's claim, the "shell casings" found in the defendant's room were "cartridge cases" within the meaning of that statute.[6]

b. *Vagueness.* For the first time on appeal, the defendant argues that the statute is void for vagueness based on a perceived ambigu-

---

[4]Although our cases often use the term, "cartridge casing," that term is synonymous with "cartridge case," as the terms "case" and "casing" are synonyms. See The New Roget's Thesaurus in Dictionary Form 81 (Lewis ed. 1978).

[5]We note that the defendant has not articulated any other meanings which those terms might carry.

[6]Although we hold that G. L. c. 269, § 10(*h*), validly criminalizes unlicensed possession of any individual component of a cartridge, including shell casings, we note that we do not reach the question whether, or to what extent, the statute applies to unlicensed possession of shell casings for innocent purposes, such as for souvenirs or for resale as scrap metal.

ity in the term "cartridge case." From what we have said above, it follows that we discern no ambiguity which would invalidate the statute under the void-for-vagueness doctrine. That is, the statute is "defined in terms that are sufficiently clear to permit a person of average intelligence to comprehend what conduct is prohibited." *Commonwealth* v. *Clint C.*, 430 Mass. 219, 227 (1999), quoting from *Commonwealth* v. *Spano*, 414 Mass. 178, 180 (1993).[7] There was no error and accordingly, no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

c. *Substantive due process.* The defendant argues, in essence, that the statute does not satisfy the rational basis test as applied under the State or Federal Constitution. Because the defendant also failed to preserve his substantive due process claim, we again apply the substantial risk standard of review. See *ibid.* As we think it is plain that the statute "bears a reasonable relation to a permissible legislative objective," namely, the protection of the public from the danger posed by the assemblage and usage of ammunition, we conclude that the statute does not violate the due process clause of the Fourteenth Amendment to the United States Constitution. *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 268 (1992), quoting from *Pinnick* v. *Cleary*, 360 Mass. 1, 14 (1971). For the same reason, the statute does not violate the Massachusetts Constitution because it "bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Rushworth, supra* at 268-269, quoting from *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life*, 307 Mass. 408, 418 (1940). Accordingly, there is no substantial risk of a miscarriage of justice.

*Judgment affirmed.*

---

[7]The defendant does not make an adequate appellate argument that the statute violates the Massachusetts Constitution. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).